**Joe Kenneth POLK, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–92–301–CR.**

Court of Appeals of Texas, Fort Worth.

Nov. 24, 1993.

5. TEX.CIV.PRAC. & REM.CODE ANN. § 16.068 (Vernon 1986).

6. *Lathem v. Richey,* 772 S.W.2d 249, 255 (Tex. App.—Dallas 1989, writ denied).

7. *Id.*

8. *See Woods v. William M. Mercer, Inc.,* 769 S.W.2d 515, 517 (Tex.1988).

9. *See id.* at 518.

Deborah Nekhom, J. Rex Barnett, Fort Worth, for appellant.

Tim Curry, Crim. Dist. Atty., Betty Marshall, Charles M. Mallin, Assts., Tanya S. Dohoney, Jamie Cummings, and Rose Anna Salinas, Assts., Fort Worth, for appellee.

Before FARRIS, WEAVER and DAY, JJ.

## OPINION

FARRIS, Justice.

Joe Kenneth Polk was convicted of aggravated kidnapping with a deadly weapon and sentenced to twenty-two years imprisonment. TEX.PENAL CODE ANN. § 20.04 (Vernon 1989). On appeal he complains: the evidence was insufficient to prove he abducted his victim; the trial court erred in holding his prior conviction for indecent exposure was a crime of moral turpitude which could be used to impeach him; his prior conviction for murder was too remote in time to be probative impeachment evidence; and the jury charge was fundamentally defective because the application paragraph did not contain the *Geesa* definition of "reasonable doubt." *See Geesa v. State*, 820 S.W.2d 154 (Tex.Crim.App. 1991). We overrule all his points of error because: the victim's testimony provided sufficient evidence of a substantial interference with her liberty; indecent exposure is a crime of moral turpitude; the trial court did not abuse its discretion in admitting the murder without malice conviction because its probative value substantially outweighed its prejudicial effect; and *Geesa* does not require the "reasonable doubt" instruction be included in the application paragraph.

The judgment is affirmed.

According to Glorious McDonald, the victim and Polk's ex-wife, she and Polk divorced because he abused her physically and mentally. She claimed that from the date of their divorce, in August 1989, until the kidnapping, on May 26, 1990, Polk exhibited violent behavior towards her. She stated that after the divorce Polk lived with his mother in the house next to hers and on the night of May 26, 1990, as she was leaving for work, Polk accosted her. Specifically, he held a pistol to her temple, told her he was going to kill her, threw her down on the porch, took her keys, forced her into the car, and drove away. Eventually, she talked Polk into taking her to work.

According to Polk, he never physically or emotionally abused McDonald, although he did concede he had acted like a "jerk" in the relationship. He claimed that on the day in question, McDonald complained to him about back pain and offered him her car if he would drive her to work.

The State's witnesses were the victim, the victim's supervisor, the investigating officer, and the medical records custodian for the hospital. The victim's testimony is summarized above and the remaining witnesses' testimony is summarized as follows: McDonald's supervisor testified McDonald showed up for work as usual on May 26, 1990, but later complained about being in pain so he took her to the hospital; the investigating officer testified she interviewed McDonald and filed a report, and McDonald appeared upset when she saw her at the hospital; and the medical records custodian for the hospital testified the records showed McDonald was treated at the hospital for pelvic and "tail bone" pain and these areas appeared normal, with no sign of injury on the X-rays or through physical examination.

The defense called only the defendant and his mother. Polk's testimony is summarized above. His mother testified that on the night of May 26, 1990, she saw Polk leave the house and go to visit a friend named Charles, who lived "catty-corner" from her house. She also saw McDonald leave her house alone, get into her car, and leave for work.

■ In his first point of error, Polk contends the evidence was insufficient to prove he abducted his victim because there was no evidence she was restrained without her consent. The evidence Polk cites in his general statement of facts includes the victim's testimony Polk grabbed her, held a gun to her head, picked her up, threw her into her car, and drove away. This testimony alone was evidence of a substantial interference with the victim's liberty. *See Rogers v. State*, 687 S.W.2d 337, 342 (Tex.Crim.App.1985); *Ham v. State*, 855 S.W.2d 231, 233 (Tex.App.— Fort Worth 1993, no pet. h.). Point of error one is overruled.

In point of error two, Polk contends the trial court erred in permitting the State to impeach him, at the guilt phase of trial, with proof he had been convicted of indecent exposure because the offense is neither a felony nor a crime of moral turpitude.[1] Because indecent exposure is a Class B misdemeanor, *see* TEX.PENAL CODE ANN. § 21.08 (Vernon 1989), the issue on appeal is whether the offense is a crime of moral turpitude.

■■■ Moral turpitude has been defined to include acts which are base, vile or depraved. *See Searcy v. State Bar of Texas,* 604 S.W.2d 256, 258 (Tex.Civ.App.—San Antonio 1980, writ ref'd n.r.e). This definition does not cover all instances of one publicly exposing his anus or genitals. Nude swimmers and pranksters may offend others by their nudity with no intent to sexually arouse either themselves or their observers. However, one guilty of indecent exposure, by his intent to sexually arouse either himself or another, acts upon motives of baseness, vileness and depravity. We hold the "intent to arouse or gratify sexual desire of any person" is the element which makes the offense of indecent exposure one of moral turpitude.[2] Point of error two is overruled.

In point of error three, Polk contends the trial court erred in allowing the State to impeach him with proof of his 1967 conviction for murder without malice for which he had completed a ten-year probation. Polk objected to the proof as being too remote in time and as being more prejudicial than probative. We reject Polk's arguments because the trial court did not abuse its discretion in admitting the conviction.

Following his 1967 murder without malice conviction, Polk was convicted in 1972 of robbery by the use of a firearm and sentenced to seventy-five years imprisonment.[3] He was paroled in 1982, but his parole was soon revoked and he was again paroled in 1986.

Polk's conviction for indecent exposure occurred in October 1990 and the kidnapping occurred in May of that year.[4] He was tried on the kidnapping offense in May 1992.

Under Texas Rule of Criminal Evidence 609(c):

> Evidence of a conviction is not admissible ... if ... probation has been satisfactorily completed for the crime for which the person was convicted, and that person has not been convicted of a subsequent crime which was classified as a felony or involved moral turpitude, regardless of punishment....

*Id.* Because Polk had a history of bad behavior after his murder without malice conviction, the State was not precluded from impeaching him with the conviction, even though he had fulfilled the probation terms, unless:

> [T]he court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect.

TEX.R.CRIM.EVID. 609(b).

■■■ To determine whether this exception to excluding remote evidence applies, we employ a balancing test. Under this test we consider several factors, including, but not limited to: (1) the impeachment value of the prior crime; (2) the temporal proximity of the past crime relative to the charged offense and the witness's subsequent history; (3) the similarity between the past crime and the offense being prosecuted; (4) the importance of the defendant's testimony; and (5) the

---

1. Texas Rule of Criminal Evidence 609(a) provides:

    For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record but only if the crime was a felony or involved moral turpitude, regardless of punishment, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to a party.

    *Id.*

2. This element also distinguishes indecent exposure from a similar offense of disorderly conduct, a Class C misdemeanor. *See* TEX.PENAL CODE ANN. § 42.01(a)(12) (Vernon 1989).

3. Aggravated robbery is a first degree felony. *See* TEX.PENAL CODE ANN. § 29.03 (Vernon 1989).

4. Indecent exposure is a crime of moral turpitude and aggravated kidnapping is a first degree felony. *See* our holding under point of error one and TEX.PENAL CODE ANN § 20.04 (Vernon 1989).

importance of the credibility issue. *Theus v. State*, 845 S.W.2d 874, 880 (Tex.Crim.App. 1992).

■ In reviewing the trial court's conduct in weighing these factors and decision to admit a prior conviction, we must accord the trial court wide discretion. *Id.* at 881. Applying the *Theus* factors to the current case, we conclude the trial court did not abuse its discretion in admitting the murder without malice conviction.

■ The last two *Theus* factors concern the importance of the defendant's testimony and his credibility. Polk's testimony and his credibility were important as this trial was essentially a swearing match and its outcome depended upon the veracity of the witnesses. With this in mind, we note that as the importance of the defendant's credibility escalates, so does the need to allow the State an opportunity to impeach the defendant's credibility. *See id.*

The first three *Theus* factors appraise the impeachment value, the temporal proximity, and the similarity of evidence offered. First, we note the murder without malice conviction would not cause the jury to necessarily perceive Polk as a kidnapper because the two crimes are not similar. Second, although the murder without malice conviction is not recent, we recognize the presumptive exclusion of remote convictions is grounded on a belief in an individual's ability to reform. *See Kizart v. State*, 811 S.W.2d 137, 141 (Tex. App.—Dallas 1991, no pet.). This ground is not compelling here because Polk has demonstrated a propensity to commit crimes. The final factor we consider cuts against admitting the evidence. Because murder is a crime of violence and not deception, its impeachment value is not high.

After carefully weighing the factors and the facts of this case, we are compelled to conclude that because Polk's testimony and credibility determined the outcome of this case, affording the State the opportunity to impeach Polk outweighed any weakness in the impeachment value of the evidence offered. Therefore, the trial court did not err in admitting the murder without malice conviction. Point of error three is overruled.

In his last point of error, Polk complains the jury charge was fundamentally defective because the instruction on "reasonable doubt" was placed after the application paragraph and not in it.

The application portion of the charge read:

Now, if you find from the evidence beyond a reasonable doubt that on or about the 26th day of May, 1990, in Tarrant County, Texas, the defendant, Joe Kenneth Polk, did then and there with the intent to terrorize or inflict bodily injury on Glorious McDonald did then and there intentionally or knowingly abduct Glorious McDonald by restricting the movements of said Glorious McDonald without her consent, so as to interfere substantially with her liberty, by confining her in her automobile and moving her from one place to another, with the intent to prevent her liberation by using or threatening to use deadly force, namely: threatening to kill her or holding to her head a deadly weapon, to-wit: a firearm, then you will find the defendant guilty of the offense of aggravated kidnapping.

Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the defendant of the offense of aggravated kidnapping and say by your verdict not guilty.

In *Geesa*, the Court of Criminal Appeals adopted a jury instruction on reasonable doubt and required that this instruction be submitted to the jury in all cases tried thereafter. *Geesa*, 820 S.W.2d at 162, 165. Since Polk's trial occurred in May 1992, the trial court had to submit the "reasonable doubt" instruction adopted in *Geesa*.

The charge contained the following definition of "reasonable doubt":

All persons are presumed to be innocent and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt. The fact that a person has been arrested, confined, indicted, or otherwise charged with the offense gives rise to no inference of guilt at this trial. The law does not require a defendant to prove his innocence or produce any evidence at all. The pre-

**632**

sumption of innocence alone is sufficient to acquit the defendant, unless the jurors are satisfied beyond a reasonable doubt of the defendant's guilt after careful and impartial consideration of all the evidence in the case.

The prosecution has the burden of proving the defendant guilty and it must do so by proving each and every element of the offense charged beyond a reasonable doubt and if it fails to do so, you must acquit the defendant.

It is not required that the prosecution prove guilt beyond all possible doubt; it is required that the prosecution's proof excludes all "reasonable doubt" concerning the defendant's guilt.

A "reasonable doubt" is a doubt based on reason and common sense after a careful and impartial consideration of all the evidence in the case. It is the kind of doubt that would make a reasonable person hesitate to act in the most important of his own affairs.

Proof beyond a reasonable doubt, therefore, must be proof of such a convincing character that you would be willing to rely and act upon it without hesitation in the most important of your own affairs.

. . . .

The indictment in this case is no evidence whatsoever of the guilt of the defendant. It is a mere pleading necessary in order to bring this case into court for trial, and you will consider it for no purpose at all.

 This reasonable doubt instruction is essentially the same instruction the Court of Criminal Appeals adopted in *Geesa. See id.* at 162. Further, this instruction is identical to that submitted in *Hammons v. State*, 856 S.W.2d 797, 803–04 (Tex.App.—Fort Worth 1993, pet. filed). In *Hammons* we accepted this instruction and noted *Geesa* does not dictate the specific placement of the instruction. *See id.* at 804. What the Court of Criminal Appeals has dictated is that a failure to apply a theory of law to the facts of the case makes the charge insufficient to sustain a conviction on that theory. *Jones v. State*, 815 S.W.2d 667, 670 (Tex.Crim.App. 1991).

 Because the charge properly defined reasonable doubt and applied the law on reasonable doubt to the facts in this case, we find no error in the charge. Point of error four is overruled.

The judgment is affirmed.