**Beatrice Garcia SAENZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 07–95–0236–CR.**

Court of Appeals of Texas, Amarillo.

Sept. 4, 1996.

---

**250**

QUINN, Justice.

Beatrice Garcia Saenz, appellant, appeals from a judgment convicting her of murder. In two points of error she asks whether the evidence was insufficient to disprove, beyond a reasonable doubt, that she acted under the influence of sudden passion and whether the court erred by including an instruction on provoking the difficulty in its charge to the jury. We answer "no," overrule both points of error and affirm the judgment.

### Background

Appellant was convicted of murdering Mary Lou Esparza, an individual with whom she had a history of family conflict. On the day of the murder, appellant, having been taunted by two acquaintances of Esparza, obtained a handgun, spied her victim sitting in a car at a neighboring home, walked towards and stopped next to her, entered into a brief discourse, and then fired. Five rounds were eventually discharged at a range varying from point blank to several feet. Esparza later died of the gun shot wounds appellant inflicted.

At the time of the shooting, three other individuals were in the car with the deceased. Two were adult female friends of the deceased, and the third, a baby held by the deceased.

Appellant contended at trial that she acted under the immediate influence of sudden passion created by adequate cause and in self-defense. Issues encompassing both claims were submitted to the jury, but, the latter found her guilty of murder.

### Points of Error

*a. Sufficiency of the Evidence Disproving Sudden Passion*

Appellant initially attacks her conviction for murder because the evidence did not disprove, beyond reasonable doubt, that she acted under the influence of sudden passion. In her view she should not have been convicted for anything other than voluntary manslaughter. We disagree.

Law Offices of Mike Brown, Mike Brown, Lubbock, for appellant.

Hale County District Attorney, Terry D. McEachern, Robert W. Kinkaid, Jr., Plainview, for appellee.

Before REYNOLDS*, C.J., and DODSON and QUINN, JJ.

* Charles L. Reynolds, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex.

Gov't Code Ann. § 75.002(a)(1) (Vernon Supp. 1996).

At the time of the killing, sudden passion, or the lack thereof, constituted an implied element of the offense of murder. *Johnson v. State,* 815 S.W.2d 707, 710 (Tex.Crim.App. 1991). Once raised by the evidence, the State had the burden to disprove, beyond reasonable doubt, its presence. *Id.* at ·710–11. It could do so in several ways. For instance, the State may have shown that the appellant was capable of acting and acted with cool reflection at the moment of the killing despite circumstances indicative of provocation. *Id.* at 711, *quoting, Gold v. State,* 736 S.W.2d 685 (Tex.Crim.App.1987), *overruled on other grounds,* 785 S.W.2d 824 (Tex.Crim.App.1989).

Or, the prosecutor may establish that " 'there was no provocative conduct, or at least none occurring at the time of the offense.' " *Id.* Indeed, sudden passion consists of passion arising at the time of the offense and directly caused by the words or conduct of the individual killed or another acting with the deceased. *Tex. Pen. Code Ann.* § 19.04(b) (Vernon 1974) (as worded prior to effective date of 1993 amendments). The passion cannot solely be the result of former provocation. *Id.* And, by proving the absence of contemporaneous provocation, the State dismantles the foundation upon which sudden passion must stand. *See Garza v. State,* 878 S.W.2d 213, 217 (Tex. App.—Corpus Christi 1994, pet. ref'd) (holding that if there was not contemporaneous provocation there is no adequate cause for the passion).

Or, the State may succeed by illustrating that the deceased's conduct was not sufficiently provocative. *Id.; Johnson v. State,* 815 S.W.2d at 711. That is, not every form of provocation can lessen one's culpability for murder. Quite the contrary, it must be the type of activity which would commonly prevent one of ordinary temper from coolly reflecting. *Tex. Pen. Code Ann.* § 19.04(c). Simply put, those desiring to be members of a civilized society must grin and bear some forms of conduct even though distasteful or upsetting.

█ Upon "[v]iewing all of the evidence . . . which allows a presumption that the jury invoked its prerogative to discount appel-

lant's own testimony as self-serving, we find that a reasonable jury could have found the absence of sudden passion beyond a reasonable doubt." *Gold v. State,* 736 S.W.2d 685, 690 (Tex.Crim.App.1987), *overruled on other grounds,* 785 S.W.2d 824 (Tex.Crim.App. 1989). The record contains evidence of an ongoing conflict between the families of appellant and decedent. The conflict allegedly started years earlier when a member of appellant's family informed the police that one of Esparza's kin was driving while intoxicated. In time, the dislike for each other grew and manifested itself in physical attack. For example, an incident occurred, about a month before the shooting here at issue, wherein appellant was allegedly hit by Esparza and her family a number of times. Apparently, Esparza told several girlfriends of it and boasted that she had "beat-up" appellant. After that, the girlfriends, along with Esparza, would "laugh" and make some type of arm gesture at appellant when they saw her. They would not "leave me alone," according to appellant.

"[E]arly at *noon* " on the day of the killing, those very same girlfriends drove by appellant's house again laughing and gesturing at her. (Emphasis added). At approximately *9:30 that night* Esparza visited her cousin who happened to live next door to appellant. Appellant saw her and obtained a handgun. With the weapon in hand, she moved towards the deceased (who was then sitting in the passenger seat of a vehicle in the neighboring driveway) and informed her that "she had something to straighten out." Esparza's cousin, who was present, testified that appellant did not seem upset. So too did she allegedly tell appellant that they wanted "no problems so [they] were leaving." Moreover, according to this witness, Esparza did nothing to taunt appellant; rather, according to another witness, the deceased informed appellant that they would settle their differences "in court." Within moments, appellant gestured as if she were about to hit Esparaza and then fired five times.

Though not appearing as a witness, appellant spoke through a confession she had voluntarily given the police. Therein, she stated that she was angered by the continuous

laughing and taunting, that Esparaza was told immediately before the shooting that she wanted no trouble, and that after requesting Esparza to exit the vehicle Esparza cursed (though the words said went unmentioned) and reached under her car seat. Not knowing whether the deceased had a weapon (though later acknowledging that Esparaza did not attack), appellant fired. Immediately thereafter, appellant drove to the local police station, surrendered, told the police that her actions were wrong, and claimed that she was angry.

Needless to say, this montage of testimony created an issue of fact. Furthermore, the jurors were entitled to choose whom to believe, and, again, this included the right to discount some or all of appellant's comments regarding provocation. *Gold v. State*, 736 S.W.2d at 690. And, in doing so, they had sufficient evidence upon which to conclude beyond reasonable doubt 1) that no one provoked appellant at the time of the offense, 2) that any passion influencing appellant was solely the result of attenuated prior provocation, 3) that Esparza's desire to settle their differences in court, her refusal to confront appellant, or even her supposed undescribed cursing were not the type of activity that would commonly cause an ordinary person to loose the ability to coolly reflect, or 4) that appellant simply acted in cold blood by walking into her house, getting a gun, walking next door, stating that she had something to "straighten out," and shooting Esparza to death.

Whether examined under the microscope of legal or factual sufficiency, the verdict had enough evidentiary support to warrant appellant's conviction for murder. Thus, the trial court did not err in entering judgment upon the verdict.

### b. Sufficiency of the Evidence to Support Submission of Provocation Instruction

Next, appellant contends that the trial court improperly limited her right of self-defense by instructing the jury on provocation. We disagree.

■ The court may charge the jury on provocation if there is any evidence that self defense is an issue, the deceased made the first attack upon the defendant, and the defendant did some act or used some words "intended to and calculated to bring on the difficulty." *Gilmore v. State*, 871 S.W.2d 848, 852 (Tex.App.—Houston [14th Dist.] 1994, no pet.); *Matthews v. State*, 708 S.W.2d 835, 837–38 (Tex.Crim.App.1986). Appellant says nothing about the presence or absence of evidence involving the first two elements, so we do not address them.[1] Instead, her attack is focused upon the third element. She believes that the record contains no evidence of an act or word on her part intended and calculated to bring about the difficulty.

Yet, we find evidence that appellant was angry because Esparza and her friends "bothered" her. So, she went into her house, acquired a gun, approached Esparza as she sat in the car, stopped so close to the victim that she could touch her by hand or gun, engaged in brief discourse, and then told her to "get down" from the car. Furthermore, witnesses also saw appellant gesture as if to hit Esparza prior to shooting.

■ At least one court has held that inviting the victim to approach during a confrontational setting illustrates provocation. *Gilmore v. State*, 871 S.W.2d at 852. Implicit within that decision is the recognition that a reasonable juror could interpret the invitation as a challenge. Here, we have that as well as effort to strike, whether real or feigned, anger, and, for the lack of a better phrase, invasion of space. Placing oneself so close to another that they could touch, coupled with the other circumstances described, constituted some evidence creating a question of fact as to whether appellant was provoking the difficulty. *See Norwood v. State*, 135 Tex.Crim. 406, 120 S.W.2d 806, 809 (App.1938) (stating that the appellant's intent may be determined by his word and conduct). Thus, the evidence warranted the court to instruct the jury on provocation. *See Jamison v. State*, 141 Tex.Crim. 349, 148

1. Indeed, she would be hardpressed to make such an attack since that would tend to also defeat her claim of self-defense. And, if she was

not entitled to that defense in the first place, its seems unlikely that the court's purported effort to limit the defense harmed her in any way.

S.W.2d 405, 407–08 (App.1941), *overruled on other grounds,* 156 Tex.Crim. 140, 239 S.W.2d 105 (App.1951) (holding that ordering the victim, with whom the appellant had an ongoing dispute, to stop while holding a firearm was sufficient evidence to warrant a provocation instruction); *Norwood v. State,* 135 Tex.Crim. 406, 120 S.W.2d 806, 808–09 (App.1938) (holding that evidence of appellant's continuing confrontations with the victim, acquisition of a firearm after a recent confrontation, and invitation to approach while exhibiting the firearm warranted an issue on provocation).

Having overruled both points of error, we affirm the judgment entered below.

