Ifren ESCOBEDO, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–05–00056–CR.

Court of Appeals of Texas,
Waco.

July 26, 2006.

Discretionary Review Refused
Nov. 8, 2006.

Thomas L. Allensworth, Wichita Falls, for appellant.

Barry L. Macha, Wichita County Dist. Atty., Wichita Falls, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

FELIPE REYNA, Justice.

This case involves a conviction for murder, whereby Ifren Escobedo received a life sentence and a $10,000 fine. Escobedo raises two issues on appeal: (1) the evidence is insufficient to disprove sudden passion; and (2) the court abused its discretion by allowing Escobedo to be impeached with a prior conviction for public lewdness. We affirm.

## BACKGROUND

In 1991, Escobedo met the victim, Gerald Curley, at a park. Curley followed Escobedo to a friend's house. Escobedo asked Curley to stop following him. However, Curley then followed Escobedo to his apartment where they engaged in homosexual acts. When Curley ignored requests to leave, Escobedo strangled Curley with an electrical cord and left the apartment. After confessing the crime to his ex-wife, Escobedo returned home, stuffed the body into Curley's car and abandoned it in an isolated area.

For several years, the murder remained unsolved until a new examination of the evidence led to Escobedo's arrest. In a videotaped statement, Escobedo confessed to the crime, unable to articulate a reason for the killing, stating that he "snapped." Escobedo denied feeling provoked or motivated by theft. He claimed to be nonviolent and said he discarded Curley's possessions.

Various witnesses testified that the crime could qualify as either one of deliberation *or* sudden passion. Other witnesses viewed Escobedo as incapable of murder and said he appeared upset and remorseful. Detective Greg Burt testified that Escobedo denied feeling provoked or angry at the time of the killing and admitted to taking some of Curley's possessions.

Escobedo testified at the guilt/innocence phase of the trial. Finding public lewdness to be a crime of moral turpitude, the trial court allowed Escobedo to be impeached with a prior misdemeanor conviction for public lewdness. The jury convicted Escobedo and assessed punishment as indicated above.

## SUDDEN PASSION

Escobedo contends in his first issue that the evidence is factually insufficient to disprove that he acted under the influence of sudden passion from adequate cause.

Because the crime occurred before 1994, we apply the law in effect at that time. Murder involves "intentionally or knowingly" causing an individual's death. Act of May 28, 1973, 63d Leg., R.S., ch. 426, art. 2, § 1, 1973 Tex. Gen. Laws 1122, 1123 (amended 1993) (current version at TEX. PEN.CODE ANN. 19.02(b)(1) (Vernon 2003)); *Johnson v. State,* 815 S.W.2d 707, 709 (Tex.Crim.App.1991). Murder committed "under the immediate *influence of sudden passion arising from an adequate cause*" constitutes voluntary manslaughter.[1] Act of May 28, 1973, 63d Leg., R.S., ch. 426, art. 2, § 1, 1973 Tex. Gen. Laws 1122, 1124 (amended 1993) (current version at TEX. PEN.CODE ANN. 19.04 (Vernon 2003)).

"Sudden passion" results from provocation by the victim or someone acting with the victim that "arises at *the time of the offense and is not solely the result of former provocation.*" Act of May 28, 1973, 63d Leg., R.S., ch. 426, art. 2, § 1, 1973 Tex. Gen. Laws 1122, 1124 (repealed 1993) (current version at TEX. PEN.CODE ANN. § 19.02(a) (Vernon 2003)); *Johnson,* 815 S.W.2d at 710. "Adequate cause" is the "degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." *Id.*

Various circumstances may establish a lack of sudden passion: (1) absence of "provocative conduct, or at least none occurring at the time of the offense," thus negating adequate cause; (2) provocation *sufficient* to "render a man of ordinary temper incapable of cool reflection," but defendant still acted "coolly and deliberately;" or (3) provocation *insufficient* to "render a man of ordinary temper incapable of cool reflection," but that provoked defendant. *Id* at 711; *Saenz v. State,* 930 S.W.2d 249, 251 (Tex.App.-Amarillo 1996, no writ). Where sudden passion is raised by the evidence and the jury renders a murder conviction, the defendant may challenge the sufficiency of the evidence in two distinct ways:

1. Whether the evidence was sufficient to establish the offense of murder; and
2. Whether the evidence was sufficient to disprove the issue of [sudden passion].

*Johnson,* 815 S.W.2d at 711; *see Garza v. State,* 878 S.W.2d 213, 217 (Tex.App.-Cor-

---

1. The former law recognized sudden passion as an issue for the guilt-innocence phase of a murder trial. *See Ruiz v. State,* 753 S.W.2d 681, 683 (Tex.Crim.App.1988); *see also Chimney v. State,* 6 S.W.3d 681, 700 (Tex.App.-Waco 1999, pet ref'd). Under current law, sudden passion constitutes a mitigating factor at the punishment phase and defendant has the burden of proof. *See Bumguardner v. State,* 963 S.W.2d 171, 176 (Tex.App.-Waco 1998, pet ref'd).

pus Christi 1994, pet ref'd). In conducting a factual sufficiency review, we review all the evidence in a "neutral light" and determine whether the fact finder was "rationally justified in finding guilt beyond a reasonable doubt." *Zuniga v. State,* 144 S.W.3d 477, 484–485 (Tex.Crim.App.2004).

> [T]here are two ways in which the evidence may be [factually] insufficient. First, when considered by itself, evidence supporting the verdict may be too weak to support the finding of guilt beyond a reasonable doubt. Second, there may be both evidence supporting the verdict and evidence contrary to the verdict. Weighing all the evidence under this balancing scale, the contrary evidence may be strong enough that the beyond-a-reasonable-doubt standard could not have been met.

*Id* at 485.

Escobedo attacks his murder conviction only on the basis that the evidence is factually insufficient to disprove that he acted with sudden passion. We disagree for three reasons.

First, the jury could reasonably conclude that no provocation either existed or occurred at the time of the offense. *See Johnson,* 815 S.W.2d at 711; *Saenz,* 930 S.W.2d at 251. Escobedo testified that it is not uncommon for homosexual individuals to engage in forward conduct. In fact, despite feeling uncomfortable by Curley's persistence, Escobedo nevertheless invited Curley into his apartment. Most importantly, Escobedo admitted that no violence occurred and he felt neither provoked nor angry at the time of the killing. *See Garza,* 878 S.W.2d at 219. The jury could reasonably find an absence of provocation.

Second, even if Curley's aggressive behavior and refusal to leave the apartment amounted to "provocative conduct," the jury could reasonably conclude that the provocation was *insufficient* to "render a

man of ordinary temper incapable of cool reflection." *See Johnson,* 815 S.W.2d at 711; *Saenz,* 930 S.W.2d at 251. Escobedo testified that no violence occurred and, despite his discomfort, he invited Curley inside the apartment. Certainly, Curley should have exited the apartment upon request, but his refusals to do so would not provoke a man of ordinary temper to commit murder. *See Carrillo v. State,* 889 S.W.2d 501, 504 (Tex.App.-Houston [14th Dist.] 1994, no writ); *see also Rayme v. State,* 178 S.W.3d 21, 29 (Tex.App.-Houston [1st Dist.] 2005, pet ref'd). If Escobedo felt afraid or threatened, he could have easily contacted the police or vacated the apartment. Rather, Escobedo failed to act as a "man of ordinary temper" and strangled Curley to death. The jury could reasonably conclude that Escobedo responded in the face of insufficient provocation. *See Carrillo,* 889 S.W.2d at 504; *see also Rayme,* 178 S.W.3d at 29.

Third, the jury could reasonably conclude that, even if Curley's conduct gave rise to either possible or *sufficient* provocation, Escobedo acted with "cool reflection." *See Johnson,* 815 S.W.2d at 711; *Saenz,* 930 S.W.2d at 251. At trial, Dr. Nizam Peerwani testified that it would have taken 3–5 minutes of continuous pressure to kill Curley, who may have passed out within the first forty-five seconds. *See Sowell v. State,* 503 S.W.2d 793, 795 (Tex. Crim.App.1974). Dr. Peerwani further testified that strangulation is a lengthy process, unlike most sudden passion crimes that involve more spontaneous actions, such as a shooting or stabbing. Fractures in Curley's neck evidenced a large amount of force used to strangle Curley. The jury could reasonably conclude that Escobedo acted "coolly and deliberately" by continuing to strangle Curley even after any sudden passion subsided and far longer than would a "man of ordi-

nary temper." *See Johnson,* 815 S.W.2d at 712; *see also Sowell,* 503 S.W.2d at 795.

Under these circumstances, the jury did not "pick and choose" between offenses, as Escobedo claims. Rather, we hold that the jury could reasonably find, beyond a reasonable doubt, that Escobedo committed murder without adequate cause or sudden passion. Thus, the evidence is factually sufficient to support the jury's verdict. We overrule Escobedo's first issue.

## PUBLIC LEWDNESS

In his second issue, Escobedo contends that public lewdness is not a crime of moral turpitude. A crime of moral turpitude may be used to attack a witness' credibility. *See* TEX.R. EVID. 609(a). Moral turpitude encompasses crimes involving: (1) "dishonesty, fraud, deceit, misrepresentation, or deliberate violence;" (2) matters of "personal morality;" (3) conduct committed "knowingly contrary to justice, honesty, principle, or good morals;" (4) "baseness, vileness, or depravity;" (5) conduct "immoral in itself, regardless of whether it is punishable by law," in that the "doing of the act itself, and not its prohibition by statute, fixes the moral turpitude;" or (6) "immoral conduct" that is "willful, flagrant, or shameless, and which shows a moral indifference to the opinion of the good and respectable members of the community." *In re G.M.P.,* 909 S.W.2d 198, 208 (Tex.App.-Houston [14th Dist] 1995, no writ); *Turton v. State Bar of Texas,* 775 S.W.2d 712, 716 (Tex.App.-San Antonio 1989, writ denied).

Defining moral turpitude as a vile, baseless or depraved act in the "private and social duties" owed to society and "contrary to the accepted and customary rule of right and duty between man and man," the Tyler Court found public lewdness to be a crime of moral turpitude. *See Green v. County Attorney of Anderson County,* 592 S.W.2d 69, 71 (Tex.Civ.App.-Tyler 1979, no writ). Escobedo questions *Green,* contending that public lewdness is not a crime of moral turpitude because it does not exhibit a "moral indifference to the opinion of the good and respectable members of the community." We disagree.

We first note that the Eastland Court has found that a public lewdness conviction for urinating in public is not a crime of moral turpitude. *See Smith v. State,* NO. 11–95–122–CR, 1997 WL 33798095 at *4 (Tex.App.-Eastland, Feb. 27, 1997, pet ref'd)(not designated for publication). *Smith* is distinguishable because it involves the crime of urinating in public, rather than sexual misconduct.[2]

We also note that *Green* failed to explain the reasoning behind its ruling. Therefore, we draw guidance from the reasoning in *Polk v. State,* where the offense of indecent exposure was held to constitute a crime of moral turpitude. *See Polk v. State,* 865 S.W.2d 627, 630 (Tex.App.-Fort Worth 1993, pet ref'd). According to the Fort Worth Court, not all instances of indecent exposure, such as those involving "nude swimmers and pranksters," rise to the level of moral turpitude. *Id.* Rather, the base, vile and depraved intent to "arouse or gratify sexual desire" transforms the offense of indecent exposure into a crime of moral turpitude. Id. In so holding, *Polk* spoke to the elements of the offense in defining indecent exposure as a crime of moral turpitude. *See id.* Although *Polk* analyzed a different statute, we find its reasoning instructive to our analysis.

Escobedo and the State entered into a stipulation whereby they agreed that Es-

2. Urinating in public is not proscribed under Section 21.07 of the Texas Penal Code, the statute we are reviewing. *See* TEX. PEN.CODE ANN. § 21.07 (Vernon 2003).

cobedo was the same person who pled *nolo contedere* to the offense of public lewdness involving deviate sexual intercourse. *See* Tex. Pen Code Ann. § 21.07(a)(2) (Vernon 2003). In arguing that public lewdness is not "immoral in itself," Escobedo relies on content provided by television, bookstores and libraries. However, the public generally chooses to partake of this content and does not unsuspectingly happen upon individuals engaging in lewd acts. Further, Escobedo points to teenagers engaged in private conduct. Yet, social norms and values teach that this type of conduct is not intended for public performance.

Like *Polk*, all lewd conduct may not constitute moral turpitude. However, all *public* lewd acts, as currently defined by the Texas Penal Code, violate societal notions of "personal morality" and "good morals." It is not the public lewdness statute alone that frowns upon public lewdness. Rather, when performed in public, lewdness more than simply offends unsuspecting individuals, but is "immoral in itself," reflecting a "moral indifference to the opinion of the good and respectable members of the community." *See G.M.P.*, 909 S.W.2d at 208; *Turton*, 775 S.W.2d at 716.

Because the conduct underlying Escobedo's public lewdness conviction violates accepted social behavior and offends society at large, we hold that public lewdness, as defined by the Penal Code, constitutes a crime of moral turpitude and may be used to impeach a witness' credibility. We overrule Escobedo's second issue.

We affirm the judgment.