Affirmed and Memorandum Opinion filed April 3, 2007








Affirmed
and Memorandum Opinion filed April 3, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00530-CR

____________

 

TUAN THANH NGUYEN, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 174th
District Court

Harris  County, Texas

Trial Court Cause No. 1055436

 



 

M E M O R A N D U M   O P I N I O N

In two issues, appellant Tuan Thanh Nguyen challenges the
legal and factual sufficiency of the evidence supporting the trial court=s negative finding
on the issue of sudden passion.  We affirm.    

I.  Factual and Procedural Background








Appellant pleaded guilty to murder, a first-degree felony. 
At the subsequent punishment hearing before the trial court, appellant sought
to reduce the conviction to a second-degree felony by establishing he acted
under the immediate influence of sudden passion.  Appellant testified that on
the night of March 19, 2005, he, his uncle, and some friends went to a pool
hall, where appellant drank one beer.  The complainant, Vang Tien Nguyen (AVang@), and Phu Vinh
Phan (APhu@) also went to the
pool hall and drank beer.  According to appellant, at one point during the
evening, Vang sought to Aquarrel@ with a friend of
appellant=s uncle.  Later, after Vang vomited as a result of
drinking alcohol, appellant=s group, at the behest of his uncle who
thought Athings were
getting too out of hand,@ left and went to the apartment of appellant=s uncle=s friend.  Vang
and Phu wanted to accompany the group, but appellant=s uncle refused
because Athey were too
drunk.@  At the
apartment, appellant, his uncle, and his friends continued to drink beer;
appellant claims he drank Ahalf a can.@  According to
Phu, a friend of appellant=s uncle invited Vang and him to the
apartment, and the two thereafter went to the apartment and drank beer.

Eventually, the argument at the pool hall came up in
conversation, and a further argument ensued.  According to appellant, Phu
cursed at his uncle and slammed a beer can down on a table.  What happened next
is disputed.  Appellant claims that as Vang and Phu were leaving, he requested
them to come back, Atold Phu he was not to curse and
disrespect his uncle,@ and told them both to leave, which they
did.  In his statement to police, appellant maintained that Phu pushed him, and
he pushed Phu back; but, he later denied ever pushing Phu.  Phu claims that as
he and Vang were leaving, appellant began to argue with Vang and pushed him,
and appellant=s uncle told appellant to come back inside the
apartment, after which Phu and Vang left.  Appellant admitted he was Abothered@ and Aa little bit mad@ that Phu slammed
the can down and disrespected his uncle and that he was mad enough to ask Vang
and Phu to leave.    








After Vang and Phu left,  Vang called one of appellant=s uncle=s friends and told
him to tell appellant to meet in the apartment parking lot to Atalk.@  Phu told police
that appellant took the phone and argued with Vang, telling Vang he would Akick [his] ass if
he ever saw him again.@  Appellant denied ever relaying such
message to Vang.  Appellant then walked downstairs, but, seeing no one,
immediately went back upstairs.  Vang then called a second time asking for
appellant to come downstairs.  Though appellant claimed in portions of his
police statement and testimony that he went downstairs a second time Ato talk only,@ he admitted on
cross examination that he knew he was going downstairs to meet Vang for a
fight.  Further, though he said the apartment A[could not] be
locked at any time,@ he admitted he could have stayed inside
the apartment rather than go downstairs to meet Vang.

Downstairs appellant claimed he saw, through the darkness
and rain, a shadow approaching him from about ten feet away.  Phu, on the other
hand, claimed that when he and Vang arrived, appellant was waiting for them. 
Thereafter, appellant maintained that the shadow, who he later identified as
Vang, abruptly struck him over the right eye with Aa very hard
object, like a bottle,@ causing appellant to fall to the ground
and think he was blind, as his eye stung and bled profusely.  When asked about
whether he was aware that the police did not recover a bottle or other blunt
instrument from the scene, appellant remarked that the area had been cleaned by
a person from the apartment complex.  Appellant claimed that Vang pinned him on
the ground and repeatedly hit him, forcing appellant to use his arms to protect
his face.  Sometime during the alleged assault, appellant noticed that his
manicuring knifeCwhich he obtained in manicuring school and
happened to have in his pocketChad fallen out of his pocket onto the
ground next to him.  Appellant then grabbed the knife, used both hands to
unlock it and expose the blade, and, according to appellant, slashed Afreely@ at Vang in a
horizontal motion to scare Vang and Ain self-defense@ to stop Vang=s assault. 
Appellant maintained that he was scared for his life, did not intend to stab or
kill Vang, and did not know Vang was stabbed six times, including in the chest
and back. 

Vang thereafter made his way back to Phu=s car.  Phu
claimed that as they drove away, appellant banged on the vehicle=s passenger
window.  Appellant maintained that, Ashaking,@ he went directly
back upstairs to the apartment where his uncle=s friend bandaged
his eye wound.  Vang was pronounced dead on arrival at the hospital.  The autopsy
report indicates Vang sustained six Asharp force@ injuries:  five
stab wounds ranging up to four inches deep to his chest and back and one
superficial wound to his upper arm.  Aside from a laceration above appellant=s eye, minor
scrapes on his forehead, andCaccording to appellantCa headache and
swollen arm, appellant did not suffer any other injuries.  








After considering the evidence, the trial court convicted
appellant of first-degree murder, implicitly rejecting the sudden passion
issue, and sentenced him to thirty years= confinement. 
Appellant now complains the evidence is legally and factually insufficient to
support the trial court=s negative finding on sudden passion.     

III.  Analysis

Appellant contends the evidence is legally insufficient
because no evidence in the record supports a negative sudden passion finding,
and the record supports a contrary finding as a matter of law.  Appellant
further contends the evidence is factually insufficient, pointing to the
following evidence:  (1) appellant stabbed Vang only after Abeing sucker
punched with a hard object in the dark,@ (2) Vang jumped
on appellant and continuously kicked him, (3) appellant was blinded by the
assault, (3) appellant Afought for his life, believing [Vang] was
about to kill or maim him,@ (4) appellant was Ashaking@ after the attack,
(5) the incident unfolded rapidly, leaving no time for calm deliberation over
consequences, (6) neither appellant nor Vang expected a fight to ensue, (7) the
meeting in the parking lot was Vang and Phu=s idea, not
appellant=s, (8) photos indicate appellant was in fact injured,
and (9) the stab wounds Amilitate in favor of a finding that
appellant was enraged and out of control@ due to Vang=s assault.   

 At the punishment phase of a murder trial, a defendant may
reduce a murder charge  from a first-degree felony to a second-degree felony by
proving by a preponderance of the evidence that Ahe caused the
death under the immediate influence of sudden passion arising from an adequate
cause.@  See Tex. Penal Code Ann. ' 19.02(d) (Vernon
2003).  A>Sudden passion= means passion
directly caused by and arising out of provocation by the individual killed or
another acting with the person killed which passion arises at the time of the
offense and is not solely the result of former provocation.@  Id. ' 19.02(a)(2).  A>Adequate cause= means cause that
would commonly produce a degree of anger, rage, resentment, or terror in a
person of ordinary temper, sufficient to render the mind incapable of cool
reflection.@  Id. ' 19.02(a)(1). 








An attack on the legal sufficiency of the evidence to
support a negative finding on sudden passion involves two steps.  First, we
must examine the record for evidence that supports the negative finding while
ignoring all evidence to the contrary.  See Cleveland v. State, 177
S.W.3d 374, 387 (Tex. App.CHouston [1st Dist.] 2005, pet. ref=d), cert.
denied, 126 S. Ct. 1774 (2006); Nolan v. State, 102 S.W.3d 231, 238 (Tex. App.CHouston [14th Dist.] 2003, pet. ref=d).  Second, if no
evidence supports the negative finding, we must examine the entire record to
determine whether it establishes the contrary proposition as a matter of law. 
Cleveland, 177 S.W.3d at 387; Nolan, 102 S.W.3d at 238. 








In conducting a factual‑sufficiency review of the
negative finding on sudden passion, we do not view the evidence Ain the light most
favorable to the prosecution.@  Cain v. State, 958 S.W.2d 404,
407 (Tex. Crim. App. 1997).[1] 
Rather, we look at all evidence in a neutral light and will reverse only if (1)
the evidence is so weak that the finding seems clearly wrong and manifestly
unjust or, (2) considering conflicting evidence, the finding, though legally
sufficient, is nevertheless against the great weight and preponderance of the
evidence.  See Watson v. State, 204 S.W.3d 404, 414B15 (Tex. Crim.
App. 2006).  However, it is not enough that we may harbor a subjective level of
reasonable doubt to overturn a finding that is founded on legally sufficient
evidence.  See id. at 417.  We cannot conclude that a finding is Aclearly wrong@ or Amanifestly unjust@ simply because,
on the quantum of evidence admitted, we would have voted differently had we
been the fact finder.  See id.  Nor can we declare that a conflict in
the evidence justifies a new trial simply because we may disagree with the fact
finder=s resolution of
that conflict.  See id.  Rather, before ordering a new trial, we must
first be able to say, with some objective basis in the record, that the great
weight and preponderance of the (albeit legally sufficient) evidence
contradicts the verdict.  See id.  In conducting our factual-sufficiency
review, we must also discuss the evidence appellant claims is the most
important in allegedly undermining the finding.  See Sims v. State, 99
S.W.3d 600, 603 (Tex. Crim. App. 2003).  Moreover, under both legal and factual
sufficiency reviews in this context, we defer to the fact-finder=s determination of
witnesses= credibility and of the weight given to the evidence. 
Cleveland, 177 S.W.3d at 388. 

We conclude the evidence is legally and factually
sufficient.  First, the trial court=s finding depended
largely on accepting appellant=s version of the events, and, as fact
finder, the trial court had the right to believe or disbelieve his account.  See
id.; see, e.g., Corpus v. State, No. 07‑02‑0475‑CR,
2005 WL 924707, at *4 (Tex. App.CAmarillo Apr. 20,
2005, pet. ref=d) (not designated for publication) (finding evidence
factually sufficient to support negative finding on sudden passion where
contrary finding depended largely on appellant=s version of
stabbing incident, which jury could choose to disbelieve).  








Moreover, substantial evidence in the record undercuts
appellant=s theory that he stabbed Vang under the immediate
influence of sudden passion arising from an adequate cause.  Appellant admitted
on cross examination that he knew he was going downstairs for a fight, and Phu
told police appellant pushed Vang, threatened to Akick [his] ass,@ and was waiting
for him and Vang when they arrived at the apartment.  Such evidence indicates
appellant anticipated a fight and does not exemplify sudden passion.  See
McKinney v. State, 179 S.W.3d 565, 570 (Tex. Crim. App. 2005) (finding no
evidence of sudden passion where appellant and victim previously fought, and
appellant thereafter retrieved gun while waiting for victim to return home,
indicating appellant prepared himself to respond to anticipated altercation); Goff
v. State, 681 S.W.2d 619, 625 (Tex. App.CHouston [14th
Dist.] 1983) (finding no evidence of sudden passion where appellant agreed to Ago outside@ to settle
differences with victim after verbal altercation in club, and, after attempting
to knock victim off balance, appellant felt stab in leg, got scared and feared
future stabbing, and used own knife to stab victim to death), aff=d, 720 S.W.2d 94
(Tex. Crim. App. 1986).  Appellant also admitted he could have stayed inside
the apartment, rather than twice responding to Vang=s request to come
downstairs.  Compare Escobedo v. State, 202 S.W.3d 844, 847 (Tex. App.CWaco 2006, pet.
ref=d) (finding
evidence factually sufficient to support negative finding on sudden passion
where appellant, who initially asked victim to stop following him and later
invited victim into home where they engaged in sexual acts, could have
contacted police or left home if he felt afraid of victim, rather than killing
him after his refusal to leave), with Guerra v. State, 936 S.W.2d 46, 49
(Tex. App.CSan Antonio 1996, pet. ref=d) (affirming
finding of sudden passion where appellant faced attempted knife attack by
victim and could not withdraw from situation).  Finally, Phu=s statement that
appellant banged on the passenger window of the car after the incident does not
comport with appellant=s repeated claim that he was scared for
his life and thus acted out of sudden passion.  See Ramon v. State, No.
08‑03‑00045‑CR, 2005 WL 623281, at *7B8 (Tex. App.CEl Paso Mar. 17,
2005, no pet.) (not designated for publication) (finding no evidence of sudden
passion where appellant, after shooting victim, exchanged gunfire with police
officer, threatened victim=s co-worker, and taunted and pointed gun
at officer).  

We conclude that some evidence in the record supports the
trial court=s negative finding on sudden passion.  We further do
not find that the evidence is so weak as to render the finding clearly wrong
and manifestly unjust or that the finding is against the great weight and
preponderance of the evidence.  Accordingly, we hold that the evidence is
legally and factually sufficient to support the trial court=s negative finding
on sudden passion.

We overrule appellant=s issues and
affirm the trial court=s judgment.

 

 

 

 

/s/      Leslie B. Yates

Justice

 

 

 

 

Judgment rendered
and Memorandum Opinion filed April 3, 2007.

Panel consists of
Justices Yates, Anderson, and Hudson.

Do Not Publish C Tex. R. App. P. 47.2(b).









[1]  We note that this court recently acknowledged the
viability of a factual sufficiency review of a negative finding on sudden
passion.  See Velazquez v. State, No. 14‑06‑00086‑CR,
___ S.W.3d ____, 2007 WL 703742, at *3 & n.1 (Tex. App.CHouston [14th Dist.] Mar. 8, 2007, no pet. h.).