Aaron Keco RAYME, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–04–00066–CR.

Court of Appeals of Texas, Houston (1st Dist.).

May 26, 2005.

Discretionary Review Refused Nov. 9, 2005.

summary judgment was properly granted in this case.

Ken Goode, Houston, for Appellant.

Charles A. Rosenthal, Jr., Dist. Atty.– Harris County, Carol M. Cameron, Asst. Dist. Atty., Houston, for Appellee.

Panel consists of Justices NUCHIA, JENNINGS, and ALCALA.

## OPINION

SAM NUCHIA, Justice.

Appellant, Aaron Keco Rayme, pleaded not guilty to the offense of murder. The jury found him guilty and assessed punishment at life in prison. Appellant presents the following issues on appeal: (1) that he was egregiously harmed by the trial court's failure to instruct the jury in the punishment charge on the State's burden of proof regarding extraneous offenses, and (2) that he was denied effective assistance of counsel. We affirm.

## BACKGROUND

Enjoli Lavette Taylor was the mother of Aeshia, her then two-year-old daughter with appellant, and Journey, her then one-year-old daughter with another man. Taylor's sister, Dineatras Smith, testified at trial that Taylor and appellant lived on opposite sides of town. Smith stated that Taylor occasionally left Aeshia with appellant, but that Taylor refused appellant's requests that he be allowed to keep Journey as well. Smith also testified about several instances in which appellant physically and verbally abused Taylor. Smith described a telephone call from Taylor in which Taylor said that appellant was threatening her with a box cutter and was going to kill her. Smith stated that she heard appellant say that he wasn't going to kill Taylor "right now," but that he would later, if he wanted to. Smith also testified that instances of appellant's abusive treatment of Taylor included the following: angrily knocking a telephone out of Taylor's hand, grabbing Taylor's cell phone and throwing it out of a car window, and making harassing telephone calls to Taylor on Mother's Day weekend that included death threats. Smith said that she called the police during the Mother's Day incident and that appellant, who had apparently come to the apartment, left after the police spoke with Taylor.

On the morning of June 14, 2003, Taylor left her apartment with the children to take Aeshia to stay with appellant. Smith testified that Taylor told her that appellant was angry because Taylor wasn't going to let him keep Journey as well. Later that day, appellant stabbed Taylor to death in the home of Ronald and Pamela Blackmon, who lived near appellant. Pamela Blackmon testified that she heard screaming in her front yard followed by knocking on her front door and that, when her husband opened the door, Taylor rushed into their house followed by appellant. Ronald Blackmon testified that appellant went straight to where Taylor was and grabbed her. He said that he tried to get between them and told appellant to let Taylor go, but that appellant "pulled out a knife and he start[ed] stabbing her." Blackmon said he and his family fled to a neighbor's house to call police. and, about 10 to 15 minutes later, appellant walked calmly to a house down the street.

Houston Police Department ("HPD") Officer Dan R. Hamill, testified that he responded to a "cutting-in-progress" call at the Blackmon home "a little after 3:00 o'clock" that day. Hamill said that he, another officer, and HPD Sergeant H.L. Mayer found and arrested appellant in the driveway of a home five houses down from the crime scene. Mayer testified that the owner of that home where appellant was arrested said she was appellant's cousin and that appellant had telephoned her from the Blackmon house and told her that he had killed Taylor. Ana Elisa Lopez, an assistant medical examiner, testified that Taylor was stabbed and cut 46 times in her face and scalp, back, buttocks, chest, abdomen, hands, arms, and vagina.

## DISCUSSION

### *Charge Error*

 In his first issue, appellant asserts that he is entitled to a new punishment hearing because the trial court did not sua sponte instruct the jury at the punishment phase that the State had the burden to prove extraneous offenses and bad acts beyond a reasonable doubt. Appellant relies on *Huizar v. State* to support this contention. 12 S.W.3d 479 (Tex.Crim.App. 2000).

Following a finding of guilt, additional evidence may be introduced by both the State and the defendant at the punishment

phase of trial in accordance with article 37.07, section 3 of the Code of Criminal Procedure, which states as follows:

**Evidence of Prior Criminal Record in all Criminal Cases After a Finding of Guilty**

 (a)(1) ... evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and, notwithstanding Rules 404 and 405, Texas Rules of Evidence, *any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant, or for which he could be held criminally responsible,* regardless of whether he has previously been charged with or finally convicted of the crime or act.

TEX.CODE CRIM. PROC. ANN. art. 37.07 § 3(a)(1) (Vernon Supp.2004–2005) (emphasis added). The Code of Criminal Procedure also requires that the jury receive, in the punishment phase of trial, any "additional written instructions as may be necessary." *Id.* § 3(b). Although the Code of Criminal Procedure does not expressly require a jury instruction concerning extraneous offenses admitted in the punishment phase of a trial under section 3(a), "such instruction is logically required if the jury is to consider the extraneous-offense and-bad act [sic] evidence under the statutorily prescribed reasonable-doubt standard." *Huizar*, 12 S.W.3d at 484. "Section 3(a)'s requirement that the jury be satisfied of the defendant's culpability in the extraneous offenses and bad acts is the 'law applicable to the case' in the non-capital punishment context." *Id.*

The trial court, thus, must instruct the jury that, at the punishment phase, extraneous offense and bad act evidence may only be considered if it meets the statutorily prescribed reasonable-doubt standard. *Id.* Because the trial court bears the responsibility to instruct the jury, the defendant is not required to make an objection or request under section 3(a) in order to preserve this type of charging error for appeal. *Id.*

While *Huizar* held that the trial court must sua sponte charge the jury under section 3(a) when extraneous evidence was *admitted* in the punishment phase of trial, this Court extended *Huizar* by holding that the trial court must sua sponte charge the jury under section 3(a) when extraneous evidence is *used* in the punishment phase of trial, even though the evidence was admitted during the guilt-innocence phase. *See Graves v. State,* 176 S.W.3d 422, 432 (Tex.App.-Houston [1st Dist.] 2004, pet. granted).

Appellant contends that the trial court erred by not instructing the jury regarding the State's burden of proof in the punishment phase of trial concerning the following extraneous offenses and bad acts that were introduced in the guilt-innocence phase of trial: "(1) Appellant would take the family car and be gone for extended periods of time, leaving the deceased and their child without provisions such as food, water, and diapers; (2) Appellant tried to force the deceased to get an abortion; (3) Appellant was 'rough' with the deceased; (4) Appellant held his hand out like he was 'hacking' the deceased and knocked a phone out of her hand; (5) Appellant menaced the deceased with a box cutter and threatened to kill her; (6) Appellant would take the deceased's money out of her purse; (7) Appellant was unfaithful to the deceased and had a child with another

woman; [and] (8) Appellant threatened to kill the deceased on Mother's day."

Appellant's sole contention is that the trial court was required sua sponte to instruct the jury on the State's burden of proof on these eight extraneous acts that were introduced in the guilt-innocence phase of trial. Appellant does not assert that this evidence was used or referenced by the State in the punishment phase of trial. The eight extraneous acts referred to by appellant did not involve evidence introduced in the punishment phase, as did *Huizar*, or evidence admitted at the guilt-innocence phase and then used or referred to in the punishment phase of trial, as was the case in *Graves*. *See Huizar*, 12 S.W.3d at 484; *Graves*, 176 S.W.3d at 432. Thus, neither *Huizar* nor *Graves* supports appellant's argument that he is entitled to a section 3(a) instruction for extraneous evidence used only in the guilt-innocence phase of trial.

We are aware that one court has extended *Huizar* even further by requiring a jury instruction any time extraneous-offense evidence is admitted in the trial, regardless of whether it is admitted in the guilt-innocence phase or the punishment phase of trial, and regardless of whether the evidence admitted at the guilt-innocence phase is used or referenced in the punishment phase of trial. *See Allen v. State*, 47 S.W.3d 47, 50 (Tex.App.-Fort Worth 2001, pet. ref'd) ("If extraneous offense or bad acts evidence is before the jury, *regardless of whether such evidence was introduced at the guilt-innocence or punishment phase*, article 37.07, section 3(a) requires that the jurors be instructed not to consider such extraneous offenses or bad acts in assessing the defendant's punishment unless they find the defendant culpable for such offenses or bad acts under the statutorily prescribed reasonable doubt standard.") (emphasis added). *But*

*see, Guzman v. State*, No. 04–02–00198–CR, 2003 WL 22336052, at *4 (Tex.App.-San Antonio Oct.15, 2003, pet. ref'd) (not designated for publication) (citing *Allen* but finding no harm because, inter alia, the State did not use evidence of extraneous acts during punishment phase). We decline to follow the holding in *Allen* requiring that a trial court sua sponte give a section 3(a) jury instruction any time extraneous-offense evidence is admitted in the trial, regardless of whether it is admitted in the guilt-innocence phase or the punishment phase of trial, and regardless of whether the extraneous-offense evidence admitted at the guilt-innocence phase is used or referenced in the punishment phase of trial.

■ Appellant next asserts that the trial court was required sua sponte to give the extraneous-offense burden-of-proof instruction because the State introduced victim impact evidence. In the punishment phase of trial, the State called Ronald Blackmon, the owner of the house where appellant committed the murder. Blackmon testified that he had to sell his house because his children were afraid and uncomfortable living there. The State also presented testimony from the deceased's mother, who explained how she and the deceased's children were impacted by appellant's offense. The evidence described here is not evidence of extraneous offenses or bad acts; it is victim impact evidence and does not require a section 3(a) burden of proof jury instruction. *See Brown v. State*, 54 S.W.3d 930, 932 (Tex.App.-Corpus Christi 2001, pet. ref'd).

■ Appellant further asserts that the trial court was required to give sua sponte the extraneous-offense burden-of-proof instruction because the State elicited evidence during its cross-examination of appellant's character witnesses during the punishment-phase by asking "Have you

heard ..." and "Did you know ..." type questions. During the punishment phase of trial, Randall King testified on behalf of appellant regarding appellant's relationship with Taylor, stating that the two were "not on bad terms." During cross-examination, the State asked King if he knew about a string of "kick" burglaries appellant committed in the 1990s. King acknowledged that he knew about those offenses. The State also questioned King about whether he knew that appellant had assaulted a man with a brick, and King replied that he did not know that. The State asked King if he knew that appellant had pulled a gun on Taylor's brother and King denied knowing about such an incident.

■ When an attorney has a good-faith basis for his questions, a witness's character testimony may be impeached by asking "Have you heard ..." and "Did you know ..." type questions. *See Wilson v. State,* 71 S.W.3d 346, 350–51 (Tex.Crim.App. 2002) (noting that punishment-phase character witness's awareness of specific instances of conduct may be tested on cross-examination and "not only was the State not required to prove to the jury that the acts actually occurred, but it would have been improper for the State to attempt to do so"). Appellant does not assert that the State lacked the required good-faith basis for these questions or that the questions were not relevant to the character traits at issue in the case. *See In re G.M.P.,* 909 S.W.2d 198, 210 (Tex.App.-Houston [14th Dist.] 1995, no pet.). Thus, we hold that the testimony complained of resulted from the impeachment of character witnesses through "Have you heard ..." and "Did you know ..." type questions, and did not require an extraneous-offense burden-of-proof jury instruction.

■ Finally, appellant relies on the assertion that the trial court was required sua sponte to give an extraneous offense burden of proof jury instruction because the State moved to re-admit, in the punishment phase of trial, all of the evidence admitted during the guilt-innocence phase. The State's punishment-phase re-offer of all guilt-innocence evidence had no effect on the use of that evidence in the punishment phase of trial. "It is clear that in assessing punishment the jury may consider all of the evidence adduced at trial on guilt or innocence." *Duffy v. State,* 567 S.W.2d 197, 208 (Tex.Crim.App.1978). In other words, the evidence admitted in the guilt-innocence phase of trial may be considered by the jury during the punishment phase regardless of whether the State moves to re-admit it. Thus, we see no distinction in our evaluation of the evidence merely because the State moved to re-admit it in the punishment phase of trial.

We hold that the trial court did not err by not instructing the jury in the punishment phase of trial that extraneous offenses and bad acts could not be considered unless the State proved the offenses or bad acts beyond a reasonable doubt. We overrule appellant's first issue.

### Ineffective Assistance of Counsel

In his second issue, appellant contends that his trial counsel provided ineffective assistance. Specifically, appellant asserts ineffective assistance because his counsel did not: (1) request reasonable doubt instructions on extraneous offenses and bad acts, (2) object to the victim impact testimony of Ronald Blackmon and Barnes, (3) object to improper jury argument made by the State, and (4) request an instruction on sudden passion.[1]

---

1. In his brief, before asserting the "specific

blunders" made by his trial counsel, appellant

In addressing this issue, we begin by noting that appellant's counsel did not err in not requesting a sudden passion instruction because the evidence did not raise the issue. Appellant correctly cites *Trevino v. State* for the proposition that a sudden passion charge should be given at punishment if there is some evidence to support it, even if that evidence is weak, impeached, contradicted, or unbelievable. 100 S.W.3d 232, 238 (Tex.Crim. App.2003). Appellant claims that his demeanor and actions after he stabbed Taylor to death, and the comment of one police officer that, from his viewing of the crime scene, it looked like the perpetrator was in a "rage," were sufficient to raise the issue of sudden passion. We disagree.

### A. Sudden Passion Instruction

Sudden passion is raised only when there is evidence that a defendant acted under the immediate influence of sudden passion arising from an adequate cause. *See Saldivar v. State*, 980 S.W.2d 475, 505 (Tex.App.-Houston [14th Dist.] 1998, pet. ref'd) (holding that issue of sudden passion was not raised because evidence showing victim and appellant argued was not sufficient to establish adequate cause). "Sudden passion" means passion directly caused by and arising out of provocation by the victim or another acting with the victim, and which arises at the time of the offense and is not solely the result of former provocation. TEX. PENAL CODE ANN. § 19.02(a)(2) (Vernon 2003). In other words, sudden passion is "an excited and agitated mind at the time of the killing caused by an act of the deceased." *Hob-*

*son v. State*, 644 S.W.2d 473, 478 n. 10 (Tex.Crim.App.1983). "Adequate cause" is cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection. TEX. PENAL CODE ANN. § 19.02(a)(1) (Vernon 2003).

In this case, there is no evidence that Taylor engaged in a provocative act that would have been adequate cause for appellant's asserted sudden passion. The only evidence is that Taylor had told appellant earlier in the day that she would not let appellant watch both children. Appellant's stabbing Taylor to death because she would not allow him to babysit Journey is a response that "is not objectively common in the ordinary, reasonable person [and] does not support a voluntary manslaughter issue." *See Saldivar*, 980 S.W.2d at 506 (citing *Willis v. State*, 936 S.W.2d 302, 308 (Tex.App.-Tyler 1996, pet. ref'd)). Further, the evidence demonstrated that Taylor had refused appellant's request that he babysit Journey hours before appellant murdered her. This refusal was not a provocation "which arises at the time of the offense," but a "former provocation," if a provocation at all. *See* TEX. PENAL CODE ANN. § 19.02(a)(2).

### B. Remaining Claims of Ineffective Assistance

The standard of review for evaluating claims of ineffective assistance of counsel is set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Appellant

---

also makes the "general observations" that his counsel did not cross-examine the State's witnesses during the guilt-innocence phase thoroughly enough for a murder case, did not cross-examine any of the State's witnesses during the punishment phase, and did not conduct an adequate voir dire. After making these "general observations" appellant does

not attempt to incorporate them into his argument that his trial counsel provided ineffective assistance. Thus, these "general" complaints are waived for insufficient briefing. *See McDuff v. State*, 939 S.W.2d 607, 613 (Tex.Crim.App.1997); *James v. State*, 48 S.W.3d 482, 487 (Tex.App.-Houston [14th Dist.] 2001, no pet.).

must show that (1) counsel's performance was so deficient that he was not functioning as acceptable counsel under the sixth amendment, and (2) but for the counsel's error, the result of the proceedings would have been different. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. "Under *Strickland,* the defendant must prove, by a preponderance of the evidence, that there is, in fact, no plausible professional reason for a specific act or omission." *Bone v. State,* 77 S.W.3d 828, 836 (Tex.Crim.App.2002). Our review of appellant's trial counsel's performance must be highly deferential. *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2065. We determine the reasonableness of counsel's challenged conduct in context and view it as of the time of counsel's conduct. *Id.* We are to assume a strategic motive if any can be imagined and find counsel's performance deficient only if the conduct was so outrageous that no competent attorney would have engaged in it. *Bone,* 77 S.W.3d at 833 n. 13. The policy behind this assumption is that "[i]ntensive scrutiny of counsel and rigid requirements for acceptable assistance could dampen the ardor and impair the independence of defense counsel, discourage the acceptance of assigned cases, and undermine the trust between attorney and client." *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2065.

In this case, the record is silent as to why appellant's trial counsel took, or failed to take, the actions that, according to appellant, are proof of ineffective assistance of counsel. Appellant has not overcome the strong presumption that his counsel's conduct falls within a wide range of reasonable professional assistance and might be considered sound trial strategy. *See Bone,* 77 S.W.3d at 836. To find that appellant's counsel was ineffective based on the stated grounds would call for speculation, in which we will not engage. *See Jackson v. State,* 877 S.W.2d 768, 771 (Tex.

Crim.App.1994); *Lumpkin v. State,* 129 S.W.3d 659, 665 (Tex.App.-Houston [1st Dist.] 2004, no pet.).

We overrule appellant's second issue.

## CONCLUSION

We affirm the judgment of the trial court.