HEARNE V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-05-291-CR

TYLER HUDSON HEARNE APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

------------

OPINION

------------

I.  Introduction

Appellant Tyler Hudson Hearne appeals his conviction and eighty-year sentence for murder.  In his first point, appellant contends that the trial court erred by failing to instruct the jury during the punishment phase on “sudden passion,” which provides for a lesser punishment range. In appellant’s second point, he complains that the trial court erred by conducting a conference with a juror outside the presence of appellant and his trial counsel.  We affirm.

II.  Background Facts

Appellant was charged with capital murder in the shooting death of his father, William Hearne.  After appellant entered a plea of not guilty, the jury found him guilty of the lesser offense of murder and assessed his punishment at eighty years in the Institutional Division of the Texas Department of Criminal Justice.

III.  Instruction on Sudden Passion

In appellant’s first point, he asserts that the trial court erred by failing to instruct the jury on sudden passion during the punishment phase.  The State contends that appellant was not entitled to an instruction on sudden passion because there was no evidence of sudden passion arising from a legally adequate cause.

A.  Applicable Law

Section 19.02 of the penal code discusses the offense of murder.  
Tex. Penal Code Ann.
 § 19.02 (Vernon 2003).  The pertinent parts of section 19.02 provide, 

(a) In this section:

(1) “Adequate cause” means cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection.

(2) “Sudden passion” means passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation.  

. . . . 

(d) At the punishment phase of a trial, the defendant may raise the issue as to whether he caused the death under the immediate influence of sudden passion arising from an adequate cause.  If the defendant proves the issue in the affirmative by a preponderance of the evidence, the offense is a felony in the second degree. 

Id. § 
19.02(a), (d).  

B.  Analysis

If a defendant is convicted of murder, he may argue at punishment that he caused the death while under the immediate influence of sudden passion arising from an adequate cause.  
Trevino v. State
, 100 S.W.3d 232, 237 (Tex. Crim. App. 2003).  Sudden passion is “an excited and agitated mind at the time of the killing caused by an act of the deceased.”  
Rayme v. State
, 178 S.W.3d 21, 28 (Tex. App.—Houston [1st Dist.] 2005, pet. ref’d) (quoting
 Hobson v. State
, 644 S.W.2d 473, 478 n.10 (Tex. Crim. App. 1983)).  Sudden passion is a mitigating circumstance that, if found by the jury to have been proven by a preponderance of the evidence, reduces the offense from a first degree felony to a second degree felony.
  McKinney v. State
, 179 S.W.3d 565, 569 (Tex. Crim. App. 2005); 
see
 
Tex. Penal Code Ann.
 § 19.02(d).  Thus, before a defendant is allowed a jury instruction on sudden passion, he must prove that there was an adequate provocation; that a passion or an emotion such as fear, terror, anger, rage, or resentment existed; that the homicide occurred while the passion still existed and before there was reasonable opportunity for the passion to cool; and that there was a causal connection between the provocation, the passion, and the homicide.  
McKinney
, 179 S.W.3d at 569.  Thus, a sudden passion charge should have been given if some evidence shows that appellant’s mental state rose beyond a bare claim of fear to render him incapable of rational thought and collected action.  
See Kennedy v. State
, 193 S.W.3d 645, 654 (Tex. App.—Fort Worth 2006, pet. filed) (op. on reh’g en banc).

Appellant contends that the testimony of Ramon Salinas, Stephanie Teran, and Janis Davies demonstrated that he was entitled to an instruction on sudden passion.  He asserts that the evidence shows that he “acted out of anger, rage, resentment and terror that [were] the product of his father’s threats to essentially have him put in jail, or to go to a military school.”  Appellant points to Salinas’s testimony that appellant admitted shooting his father after appellant’s father screamed him for having drugs in the house. Salinas stated that appellant told him that his father flushed the drugs down the toilet and told appellant that he could either go to jail or go to a military school. Additionally, appellant asserts that Teran’s testimony—that appellant admitted shooting his father one hour prior and that appellant was “mad, [because his father] was going to call the cops on him.  That his dad was going to call the cops on him and he got upset.”—raised the issue.  Teran stated that appellant told her that his father was in the process of dialing 911 and appellant shot him before he dialed the last digit.  Appellant contends that Davies’ testimony regarding the shooting was the same as Teran’s testimony.

However, these statements fail to show that appellant had adequate cause to shoot his father.  As stated above, adequate cause means “cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper.”  
Tex. Penal Code Ann.
 § 19.02(a)(1).  The mere fact that a defendant acts in response to the provocation is not sufficient to warrant a charge on sudden passion.  
Trevino
, 100 S.W.3d at 241.  Appellant asserts that he was angry because his father told him that he could go to jail or military school.  The evidence does not reflect fear or anger that was so strong and overpowering that it rendered appellant incapable of rational thought and collected action.  
See McKinney
, 179 S.W.3d at 568.  Therefore, we hold that the trial court did not err by refusing to submit an instruction on sudden passion because the evidence does not show that appellant had adequate cause to shoot his father.  Thus, we overrule appellant’s first point.

IV.  Juror Conference

In appellant’s second point, he contends that the trial court erred by conducting a private conference with a juror outside the presence of appellant and his trial counsel.  On appeal, appellant asserts that the private conference violated 1) his rights under article 36.27 of the code of criminal procedure, which prescribes the method by which a trial court may communicate with a juror, 2) his right to be present for all phases of trial, and 3) his right to have a court reporter present to transcribe the proceedings.  
See
 
Tex. Code Crim. Proc. Ann.
 arts. 33.03 (Vernon 1989), 36.27 (Vernon 1981); 
Tex. R. App. P
. 13.1.

A.  Applicable Facts

On July 20, 2005, the third day of trial, the trial judge told the lawyers that she wanted to speak to them at the bench on the record.  The trial judge disclosed that Juror Maddux wanted to talk with her.  The trial judge told counsel, 

This is what she said to me.  She was tearful and she said that she was afraid that perhaps she had [not] filled out her questionnaire completely because she had forgotten to tell us that she had a stepson who was a victim – not a victim but who had an alcohol-related death by drowning.  

. . . . 

In fact, scoot up here a little bit.  And [she] is very afraid that she has made [a] horrible problem with this case.  I said, it’s just not.  I said that question is not on the questionnaire.  She said, well, they asked about drugs, and then I said, most people don’t consider alcohol a drug.  She didn’t even think about it until Dr. Krouse testified yesterday.  And when her stepson had died, their family had gone to talk to Dr. Peerwani, so it was just all the memories coming back.

And she volunteered, without me even asking her, “it doesn’t make me feel one way or another about this case.  It’s just that I feel like I need to tell you because I didn’t tell you,” you know.  So there you have it.  I left her in my office because I’m thinking about taking her her questionnaire just to calm her because – and then I’ll enter it in the record.  I mean, they’re all in the record anyway.  But I mean, she feels like she’s done something wrong.  That’s what this is about.  And she didn’t – because we harp so much on saying everything, you know, and report anything even if it’s inadvertent, and I really do want them to do that.  

And I think part of the result is my saying that to them, there’s hardly a trial that goes by that I don’t have to talk to a juror individually.

After learning about the private conference in the trial judge’s chambers without a court reporter, appellant’s counsel stated, 

Judge, I haven’t researched this point.  I’m not quarreling with the Court’s rendition of what the conversation was, but I’m not sure the Court talking to the juror and saying most people don’t think alcohol is a drug and other conversations and there was no court reporter back there, that causes me some angst.

The trial judge then told appellant’s counsel that he could explore the issue in a motion for new trial.  Appellant’s counsel moved for a mistrial “in an abundance of caution, because of the ex parte conversation with the juror and it’s not recorded,” and the trial court denied the motion.  After denying the motion for mistrial, the trial judge continued talking about her conversation with the juror.

THE COURT:  The stepson was drinking.  She said that there may have been some problems before that with drug use in his part, but it wasn’t related to his death at all, and she didn’t even think about it.  Didn’t think about it through voir dire.  She said, I don’t know if I repressed it.  But as soon as Dr. Krouse testified, I started thinking about our meeting with Dr. Peerwani. 

[DEFENSE COUNSEL]:  Judge, I don’t have any problem with the juror seeing her questionnaire, although, I am making a request that any further proceedings or conversations with this juror be taken down if it be in chambers, to preserve the record.

THE COURT:  That’s going to be denied.  You can question her on a motion for new trial.  I’m not going to – given her emotional state, that she feels like she’s done something wrong, I mean, she thinks she’s messed the trial up.  She said, I’m afraid –  you know, so I‘m not going to run the court reporter in there because I think that would traumatize her.  Now, if you want to tell her, thank you so much for sharing with us.  We’re going to continue with the trial, and put her back with the jury room and not show her that.

The trial continued and appellant’s motion for new trial was denied by operation of law.  This appeal followed.

B.  Error Preservation

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion.  
Tex. R. App. P.
 33.1(a)(1); 
Mosley v. State
, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh’g), 
cert. denied, 
526 U.S. 1070 (1999).  Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court’s refusal to rule.  
Tex. R. App. P.
 33.1(a)(2); 
Mendez v. State
, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004).

At trial, appellant’s objections were limited to the following:  “there was no court reporter”; “in an abundance of caution, because of the ex parte conversation with the juror and it’s not recorded”; and “I am making a request that any further proceedings or conversations with this juror be taken down.”  At no point did counsel assert that the trial court’s ex parte conversation was a violation of article 36.27 of the code of criminal procedure.  
See 
Tex. Code Crim. Proc. Ann.
 art. 36.27 (providing that communication with jurors should be through the bailiff, in writing, previewed by defense counsel, read in open court, and made a part of the record).  However, it is fair to say that counsel made it clear that he was objecting to the ex parte nature of the conversation along with the failure to have a court reporter present transcribing the discussion for the record.  And although counsel did not directly cite article 33.03—which is the statutory source of a defendant’s right to be present at all phases of trial—or directly reference appellate rule 13.1—which requires a court reporter to attend all court sessions and make a full record of all proceedings unless waived by agreement—it is clear from the record that counsel and the trial court understood these to be his two objections at trial.  
Tex. Code Crim. Proc. Ann.
 art. 33.03; 
Tex. R. App. P.
 13.1.  Counsel then moved for a mistrial, which the trial court denied stating that he could bring any of these issues up in a motion for new trial, at which time he could examine the juror.
(footnote: 1)
 Although his primary complaint on appeal focuses on his claimed violation of article 36.27, we hold that appellant waived his 36.27 complaint at trial by failing to object on this basis.  We do, however, also hold that appellant has preserved his objections at trial and now on appeal regarding his right to be present under article 33.03 and his right to have a full record made under appellate rule 13.1(a).
  
Tex. Code Crim. Proc. Ann.
 art. 33.03;
 
Tex. R. App. P.
 13.1.  We turn to the merits of those complaints.  

C.  Error Analysis

Article 33.03 provides that a defendant has the right to be present during the trial of all felony prosecutions.  
Tex. Code Crim. Proc. Ann.
 art. 33.03.  Appellate rule of procedure 13.1(a) requires the court reporter to take down all proceedings unless otherwise agreed to by the parties.
(footnote: 2)  It is obvious the trial court complied with neither of these provisions in handling this particular juror’s concerns, thereby committing trial court error.

D.  Harm Analysis

Having determined that the trial court erred by conducting a private conference with the juror, 
without appellant and both counsel present, and without a court reporter present, we must now conduct a harm analysis to determine whether the errors call for reversal of the judgment.  
Tex. R. App. P.
 44.2.  If the errors are constitutional, we apply rule 44.2(a) and reverse unless we determine beyond a reasonable doubt that the errors did not contribute to appellant’s conviction or punishment.  
Tex. R. App. P.
 44.2(a).  Otherwise, we apply rule 44.2(b) and disregard the errors if they did not affect appellant’s substantial rights.  
Tex. R. App. P.
 44.2(b); 
see Mosley,
 983 S.W.2d at 259
; 
Coggeshall v. State
, 961 S.W.2d 639, 642-43 (Tex. App.—Fort Worth 1998, pet. ref’d).  A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury’s verdict.  
King v. State
, 953 S.W.2d 266, 271 (Tex. 1997) (citing 
Kotteakos v. United States,
 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)); 
Coggeshall, 
961 S.W.2d at 643.  In making this determination we review the record as a whole.  
See
 
Johnson v. State
, 967 S.W.2d 410, 417 (Tex. 1998).

The article 33.03 right to be personally present is based upon a defendant’s right to confront witnesses against him under both the Texas and United States constitutions.  
Miller v. State
, 692 S.W.2d 88, 90-91 (Tex. Crim. App. 1985); 
Hodges v. State
, 116 S.W.3d 289, 296 (Tex. App.—Corpus Christi 2003, pet. ref’d); 
Kerr v. State
, 83 S.W.3d 832, 834 (Tex. App.—Texarkana 2002, no pet.).  Courts have also held that the right to be present can involve due process rights under certain circumstances.  
See, e.g., Jasper v. State
, 61 S.W.3d 413, 423 (Tex. Crim. App. 2001).  However, because appellant raised no constitutional complaint regarding this error, we treat the error as statutory and apply a harmless error analysis under rule 44.2(b), in which we ask whether the error affected any of appellant’s substantial rights.  
See Tracy v. State
, 14 S.W.3d 820, 827 (Tex. App.—Dallas 2000, pet. ref’d).

Additionally, the appellate rule 13.1 violation regarding the trial court’s failure to have the conversation transcribed by the court reporter has been interpreted to create a statutory right, not a constitutional right.  
See Tanguma v. State
, 47 S.W.3d 663, 676 (Tex. App.—Corpus Christi 2001, pet. ref’d) (holding failure to record challenges for cause is nonconstitutional error), 
disapproved of in part by Valle v. State
, 109 S.W.3d 500, 508-09 (Tex. Crim. App. 2003) 
(disapproving of a portion of 
Tanguma
 
but only to extent 
Tanguma 
court held that no objection to preserve error was required); 
see also
 
Brossette v. State
, 99 S.W.3d 277, 285-86 (Tex. App.—Texarkana 2003, pet. dism’d, untimely filed) (citing 
Tanguma 
for proposition that failure of court reporter to record part of record is nonconsitutional error).  Failure to record a bench conference has been held to be “a procedural defect or irregularity that must be disregarded unless a substantial right was affected.”  
Johnson v. State
, 82 S.W.3d 471, 473 (Tex. App.—Austin 2002, no pet.); 
Mitten v. State
, 79 S.W.3d 751, 763-64 (Tex. App.—Corpus Christi 2002), 
rev’d on other grounds,
 
145 S.W.3d 225 (Tex. Crim. App. 2004).  We conclude that the failure to record a conversation such as this does not implicate constitutional error, so we also apply rule 44.2(b) and disregard the error unless we determine that appellant’s substantial rights were implicated as to this complaint as well.
  Tex. R. App. P
. 44.2(b).  The Supreme Court provides us with some further guidance in 
Rushen v. Spain
, 464 U.S. 114, 104 S. Ct. 453 (1983).

In 
Rushen
, a juror in a similar circumstance recalled facts regarding an unrelated murder that she had failed to disclose during voir dire.  The jurors had been asked to disclose crimes of violence and their attitudes for any racial groups, including the Black Panthers.  
Id.
 at 115-16, 104 S. Ct. at 454.  The juror went to the judge’s chambers twice to let the judge know she knew of this other unrelated murder victim.  The judge told her not to be concerned once the juror reaffirmed she would not be affected by it.  The judge failed to record either conversation and failed to let the defendants know about them either.  However, once counsel learned of the conversation and filed their motions for new trial, the court held a hearing on them in which the juror was examined about the conversations.  The judge concluded the conversations “lacked any significance” and that the defendants had suffered no prejudice.  
Id.  
The defendant pursued a writ of habeas corpus, and the district court held that his right to be present had been denied along with his right to counsel.  
Id.
 at 117, 104 S. Ct. at 455
.  The Ninth Circuit affirmed.
 
 
Id.
 

The Supreme Court reversed despite recognizing the right to personal presence at all critical stages of trial along with the right to counsel.  
Id. 
at 122, 104 S. Ct. at 457. 
 
The Court balanced those interests with the “necessity for preserving society’s interest in the administration of criminal justice.”  
Id. 
at
 
118, 104 S. Ct. at 455. 
 
Continuing, the Court observed that “remedies should be tailored to the injury suffered . . . and should not unnecessarily infringe on competing interests.”  
Id. 
(quoting 
United States v. Morrison
, 449 U.S. 361, 364, 101 S. Ct. 665, 668 (1981)).  It held, “The lower federal courts’ conclusion that an unrecorded 
ex parte
 communication between trial judge and juror can never be harmless error ignores these day-to-day realities of courtroom life and undermines society’s interest in the administration of justice.”  
Id.
 at 118-19, 104 S. Ct. at 456.  Such trial court error, it observed, could also be remedied by a post-trial hearing.

Here, the trial court notified counsel of the conversation immediately.  Appellant then told the trial judge that he did not have a problem with the trial court’s rendition of what occurred, plus that rendition was transcribed while the trial court disclosed the conversation to both counsel at the bench.  Moreover, appellant did not pursue or present his motion for new trial or request a hearing on it to further examine this particular juror.  While a motion for new trial is not generally a required prerequisite to appeal, a motion, presentment and hearing are necessary to “adduce facts not in the record.”  
Tex. R. App. P.
 21.2; 
Rozell v. State
, 176 S.W.3d 228, 230 (Tex. Crim. App. 2005).  Further, based upon the trial judge’s rendition of the conference, the conversation did nothing more than allow the juror to report her concern of failure to properly disclose something during voir dire.  During the conference, the juror told the trial judge that she was concerned that she failed to disclose some information in her juror questionnaire:  that her stepson died in an alcohol-related drowning.  She believed that she had caused a major problem in failing to disclose this on her questionnaire in response to a question asking about drugs.  The juror had recalled her family speaking with the medical examiner, Dr. Peerwani, regarding the death of her stepson, which the juror recalled after she heard Dr. Krouse, from Dr. Peerwani’s office, testifying in this case.  The trial judge apparently tried to alleviate the juror’s concerns by telling the juror that “most people don’t consider alcohol a drug.”  While the case revealed drug use and abuse of alcohol by both the victim and appellant, we cannot say this error impacted a substantial right in the case.  The trial judge explained that she was trying to minimize this juror’s unfounded concern on an unrelated collateral matter.  Since the appellant accepted the accuracy of the trial court’s rendition of the facts, his or his counsel’s presence during the conversation would not have benefitted appellant.  If appellant is contending he would have asked the juror other questions, he could have done so at a hearing on his motion for new trial.  Likewise, since appellant accepted the trial court’s rendition of what transpired, having the court reporter’s transcription of the conversation would serve no purpose.  While it is most assuredly best for a trial court to insure a defendant’s presence, along with counsel, and to record all proceedings, we cannot say that here, under these facts, a substantial right of the appellant’s has been impacted. 
 
See Leger v. State
, 688 S.W.2d 130, 133 (Tex. App.—Beaumont 1985, no pet.).  
The court of criminal appeals has held that a communication between the trial court and the jury, although not made in compliance with statutory provisions, but which does not amount to an additional instruction by the trial court upon the law or some phase of the case does not constitute reversible error.
  McGowan v. State
, 664 S.W.2d 355, 358 (Tex. Crim. App. 1984).  Here, the trial court did not instruct the juror on the law or discuss the impending case.  The trial judge merely listened to the juror’s concern that she had improperly failed to disclose something in her responses to the jury questionnaire.  Thus, we overrule appellant’s second point.

V.  Conclusion

Having overruled appellant’s two points, we affirm the trial court’s judgment.

TERRIE LIVINGSTON

JUSTICE

PANEL F: LIVINGSTON, GARDNER, and WALKER, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED: September 7, 2006

FOOTNOTES
1:
Appellant filed a generic motion for new trial, which was denied by operation of law without a hearing. 

2:
Appellant raised no constitutional error, federal or state, regarding any of the complaints he asserts on appeal, so we do not address any constitutional issues.