**Opinion issued October 27, 2015**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-14-00831-CR

———————————

**RICKY RAMOS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 263rd District Court**
**Harris County, Texas**
**Trial Court Case No. 1411387**

---

## MEMORANDUM OPINION

A jury convicted appellant Ricky Ramos of aggravated assault with a deadly weapon. *See* TEX. PENAL CODE § 22.02. Ramos pleaded "true" to a previous conviction for harassment of a public servant and was thus subject to an enhanced sentence. The jury assessed punishment at 25 years in prison, and Ramos appealed.

In his sole issue, Ramos asserts that the trial court erred by not instructing the jury before the punishment phase that it could not consider extraneous bad acts unless the State had proved those acts beyond a reasonable doubt, and that this error caused him egregious harm.

Finding no reversible error, we affirm.

## Background

Ramos was raised by and lived with his grandparents; at the time of these events he was 20 years old. He would occasionally visit his aunt, Laura Cobb, and her common-law husband, Leonardo "Johnny" Adler, in Pasadena, Texas. Ramos's grandfather and Adler disliked one another, but Ramos generally had a good relationship with Cobb and Adler.

One evening, after a friendly visit with Cobb and Adler, Ramos left for his grandfather's home to prepare for a date. Roughly an hour later, Ramos returned to Adler's residence. Adler testified that Ramos seemed like he was on "high on something." Ramos stabbed Adler in the back with a kitchen knife. The knife broke, and Ramos continued to attempt to stab Adler with the handle.

Cobb, who had been asleep during these events, awoke when Adler yelled for her. She chased Ramos out of the house and called 911. During the call, Cobb stated that Ramos was "high on Cush."[*]

Subsequent psychological evaluation showed that Ramos was in the range of mild mental retardation for verbal ability and that he had been taking anti-psychotic, attention-stimulating, and mood-stabilizing drugs. He also admitted to previous unprescribed use of Xanax and marijuana. The psychologist diagnosed him with a psychotic disorder and unspecified mood disorder. Ramos was found competent to stand trial.

The State's closing argument in the guilt-innocence phase contended that Ramos's motive to stab Adler was that he was under the influence of drugs and felt he could "do something" for his grandfather by hurting Adler. The jury found Ramos guilty of aggravated assault.

Ramos's alleged use of "Cush" before the stabbing was not overtly referenced during the punishment phase. The defense asked the State's psychologist whether people who suffered from bipolar disorder sometimes "self-medicate" through the use of illegal drugs or marijuana, but it did not explicitly

---

[*] While there is no definition of "Cush" in the record, the term typically refers to either cannabis or a synthetic analogue. *See In re Z.R.*, No. 01-11-00715-CV, 2013 WL 4680241, at *1–2 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (mem. op., not designated for publication); *see also* DR. DRE, KUSH (Interscope Records 2010) (incorporating several marijuana references).

link this to Ramos or his potential drug use. The State noted Ramos's prior record of juvenile possession of marijuana and past recommendations that he receive drug treatment.

During the punishment phase, the State presented evidence of Ramos's Facebook page, where his cover photo was a star with the words "Tango Blast" superimposed upon it. The State also submitted a photo of a tattoo on Ramos's arm depicting a similar star logo. Cobb's sister testified that Tango Blast is a prison gang, and that Ramos had to get the tattoos or he would have been in danger. The State subsequently discussed this evidence in its closing argument for the punishment phase: "Maybe [Ramos is] just a really big Astros fan or maybe he's a member of Tango Blast which is, in the words of his aunt, a prison gang. You can also take a look at his tattoo on his arm here and see there's a little star there and a 7-1-3."

During closing arguments for the punishment phase, the defense largely relied upon mitigating factors including Ramos's mental disorders, his need for medication, and his difficult upbringing. The State addressed the defense's mitigation theory and argued that Ramos was dangerous based on the nature of the crime, his criminal history, his ostensible gang membership, and his poor relationship with authority. Neither the defense nor the State referred to Ramos's

alleged use of "Cush" in closing statements for the punishment phase. The State requested a 30-year prison sentence.

The jury charge for the punishment phase did not include an instruction regarding the State's need to prove extraneous bad acts beyond a reasonable doubt. The charge did include a statement that "[t]he burden of proof in all criminal cases rests upon the State throughout the trial and never shifts to the defendant." It also stated that the jury "may take into consideration all the facts shown by the evidence admitted . . . in the full trial of this case." Ramos did not object to the jury charge.

The jury returned a 25-year sentence. Ramos appealed.

## Analysis

In his sole issue on appeal, Ramos argues that at the punishment phase the trial court was required to give, *sua sponte*, a jury instruction that the State must prove all extraneous offenses or bad acts beyond a reasonable doubt in order to have those acts considered by the jury.

We review jury charge error under the standard set forth in *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1985). Jury charge error that was not preserved by a contemporaneous objection does not require reversal unless it causes "egregious harm" that denies the defendant the right to a fair trial. *Id.* at 171. To determine whether the appellant suffered egregious harm, a reviewing court "must

5

consider: 1) the complete jury charge, 2) the arguments of counsel, 3) the entirety of the evidence, including the contested issues and weight of the probative evidence, and 4) any other relevant factors revealed by the record as a whole." *Hollander v. State*, 414 S.W.3d 746, 749–50 (Tex. Crim. App. 2013).

Evidence of extraneous offenses and bad acts may not be considered by the jury unless the factfinder is satisfied beyond a reasonable doubt that such acts and offenses are attributable to the defendant. TEX. CODE CRIM. PROC. art. 37.07 § 3(a); *Fields v. State*, 1 S.W.3d 687, 688 (Tex. Crim. App. 1999). Article 37.07 section 3 presents a non-exclusive list of six types of evidence that could be presented at the punishment phase, including:

> (1) the prior criminal record of the defendant; (2) the general reputation of the defendant; (3) the character of the defendant; (4) an opinion regarding the reputation of the defendant; (5) the circumstances of the offense on trial; and, (6) extraneous offenses and bad acts that are shown beyond a reasonable doubt to have been committed by the defendant or for which he could be held criminally responsible.

TEX. CODE CRIM. PROC. art. 37.07 § 3; *Bluitt v. State*, 137 S.W.3d 51, 54 (Tex. Crim. App. 2004).

In *Bluitt v. State*, 137 S.W.3d 51 (Tex. Crim. App. 2004), the Court of Criminal Appeals noted that of the six types of evidence listed in Article 37.07 section 3, only extraneous offenses and bad acts have an articulated burden of proof. *Id.* at 54. Thus, based on the unambiguous language of Article 37.07

6

section 3, other forms of evidence such as the defendant's character and the circumstances of the offense on trial do not require proof beyond a reasonable doubt. *Id.*

This court has applied *Bluitt* to allow same-transaction contextual evidence to be admitted and used during the punishment phase without proof beyond a reasonable doubt. *See Atkinson v. State*, 404 S.W.3d 567, 574 (Tex. App.—Houston [1st Dist.] 2010, pet ref'd). Same-transaction contextual evidence is evidence of another crime that is so "intermixed, blended, or connected with" the charged crime that it forms an indivisible criminal transaction. *Lamb v. State*, 186 S.W.3d 136, 141 (Tex. App.—Houston [1st Dist.] 2005, no pet.). Character evidence is similarly admissible at punishment without proof beyond a reasonable doubt. *See Bluitt*, 137 S.W.3d at 54; *Gomez v. State*, No. 14-11-00659-CR, 2012 WL 6162349 at *2 (Tex. App.—Houston [14th Dist.] Dec. 11, 2012, no pet.) (mem. op., not designated for publication).

In *Huizar v. State*, 12 S.W.3d 479 (Tex. Crim. App. 2000), the Court of Criminal Appeals held that a defendant is entitled to a jury instruction on the burden of proof for extraneous offenses used in the punishment phase even if he does not request one, and that the failure to give such an instruction *sua sponte* can be reversible error when there is egregious harm. *Id.* at 484. When extraneous offenses that were introduced during the guilt-innocence phase are reintroduced in

the punishment phase, a *sua sponte* burden of proof instruction is still required. *Graves v. State*, 176 S.W.3d 422, 435 (Tex. App.—Houston [1st Dist.] 2004, pet. stricken). However, this requirement does not extend to cases where extraneous offenses are only discussed during the guilt-innocence phase and are not used as extraneous offenses in the punishment phase. *Rayme v. State*, 178 S.W.3d 21, 26 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd).

Ramos argues that two particular extraneous acts used by the State in its arguments should have prompted a burden of proof instruction: the evidence used during guilt-innocence regarding Ramos being "high on Cush" and the evidence supporting the inference that he was a member of Tango Blast. The State denies that the evidence of either act required a jury instruction, asserting that the evidence of Ramos being under the influence was same-transaction contextual evidence, and that the evidence of gang membership was character evidence. In the alternative, the State asserts that the lack of instruction did not cause egregious harm. We address each extraneous act in turn.

The evidence that Ramos was "high on Cush" was used prominently by the State in the guilt-innocence phase, but it was not directly mentioned during the punishment phase. When evidence of extraneous acts is introduced during the guilt-innocence phase but not "used or referred to" during the punishment phase, the defendant is not entitled to a *sua sponte* burden of proof instruction. *Id.* at 27.

8

To trigger an instruction, the extraneous acts must be introduced or reintroduced as a reason to enhance punishment; for example, even an explicit reference to extraneous acts within punishment-phase impeachment questions does not require a jury instruction for reasonable doubt. *Id.* Neither the defense's questions regarding self-medication nor the State's use of past convictions for marijuana directly used or referred to Ramos's use of "Cush" prior to the charged offense. The allegations that Ramos was intoxicated during the assault were not repeated or used as a reason to enhance punishment by either the defense or the State at the punishment phase.

A reoffer of guilt-innocence evidence at the punishment phase has "no effect on the use of that evidence in the punishment phase of trial," as the jury is free to consider guilt-innocence evidence during the punishment phase. *Id.* Ramos argues that the Court's instruction that the jury "may take into consideration all the facts shown by the evidence admitted . . . in the full trial of this case" was permission to consider the extraneous offenses on punishment without limitation. On the contrary, this was merely a correct statement of the law: "It is clear that in assessing punishment the jury may consider all of the evidence adduced at trial on guilt or innocence." *Id.* (quoting *Duffy v. State*, 657 S.W.2d 197, 208 (Tex. Crim. App. 1978)). In sum, there was no use or reference to Ramos's use of "Cush" as a

reason to enhance punishment during the punishment phase. As a result, there was no need for a burden of proof instruction on this extraneous offense.

Furthermore, even if the evidence that Ramos was under the influence of illegal drugs had been introduced as a reason to enhance punishment during the punishment phase, it was same-transaction contextual evidence, not an extraneous offense entitled to a jury instruction. In *Atkinson*, the evidence that the appellant was under the influence of PCP was same-transaction contextual evidence "admitted to provide the context for the occurrence of the charged offense— essentially, to explain why appellant, who had been living with the complainant and caring for her with no previous instances of abuse or trouble, had suddenly assaulted her on that night." *Atkinson*, 404 S.W.3d at 574. Similarly, the evidence that Ramos was "high on Cush" was admitted to explain why he suddenly chose to assault Adler, despite their previous good relationship. Same-transaction contextual evidence does not require a burden of proof instruction. *Id.* at 575. We conclude that the trial court did not err when it did not provide a burden of proof instruction regarding the extraneous evidence that Ramos was intoxicated during the assault.

With respect to the evidence that Ramos was a member of Tango Blast, gang membership is not a separate offense. Instead, it can be a component of an offense. Texas Penal Code section 71.02 enhances a variety of crimes such as murder,

robbery, and assault if committed as "a member of a criminal street gang." TEX. PENAL CODE § 71.02. Mere gang membership alone is not a criminal offense.

"[E]vidence of a defendant's membership in a gang is generally viewed as character evidence." *Gomez v. State*, No. 14-11-00659-CR, 2012 WL 6162349, at * 2 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (mem. op., not designated for publication); *see also Beasely v. State*, 902 S.W.2d 452, 455–56 (Tex. Crim. App. 1995); *Anderson v. State*, 901 S.W.2d 946, 949–50 (Tex. Crim. App. 1995); *Ho v. State*, 171 S.W.3d 295, 305 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd). Character evidence is a separate category in Article 37.07 section 3, and as a result a defendant is not entitled to a reasonable doubt instruction pertaining to character evidence such as gang membership. *See Bluitt*, 137 S.W.3d at 54; *Gomez*, 2012 WL 6162349 at *2.

In this case, the State invited the jury to infer that Ramos was a gang member based upon character evidence. The State did not refer to any extraneous offenses Ramos may have committed in the course of his gang membership. Accordingly, Ramos was not entitled to a reasonable doubt instruction for evidence that he was a member of Tango Blast.

After reviewing the record as a whole, we conclude that the trial court did not err when it did not instruct the jury that extraneous offenses and bad acts could not be considered unless the State proved them beyond a reasonable doubt. *See*

*Hollander v. State*, 414 S.W.3d 746, 749–50 (Tex. Crim. App. 2013); *Bluitt*, 137

S.W.3d at 54.  We overrule Ramos's sole issue.

## Conclusion

We affirm the judgment of the trial court.

Michael Massengale
Justice

Panel consists of Justices Keyes, Massengale, and Lloyd.

Do not publish.  TEX. R. APP. P. 47.2(b).