Opinion issued November 20, 2008
                                            






    





In The
Court of Appeals
For The
First District of Texas
____________

NO. 01-06-00708-CR
____________

NICHOLAS WILFORD DIEDRICK, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from 228th District Court
Harris County, Texas
Trial Court Cause No. 1036969




MEMORANDUM OPINION

          A jury convicted appellant, Nicholas Wilford Diedrick, of aggravated sexual
assault of a child younger than 14 years of age and assessed punishment at 23 years
in prison. See Tex. Penal Code Ann. § 22.021(a)(1)(B)(i), (a)(2)(B) (Vernon 2003). 
We determine whether appellant preserved his challenge that he was deprived of
effective assistance of counsel by the trial court’s improperly limiting his voir dire
and whether appellant was deprived of effective assistance of counsel by his trial
counsel’s failure:
          (1) to object during voir dire when the prosecutor posed a hypothetical
          example with facts differing from those contained in the indictment; 
 
(2) to make various objections and to request jury instructions regarding
a statement made by the complainant to appellant’s brother;
 
(3) to object to testimony and argument referring to the effect of the
crime on the complainant; and
 
(4) to investigate and to present evidence and expert testimony regarding
a 2003 psychological diagnosis of the complainant and the side effects
of medication prescribed to her. 

We affirm.
Background
          The State alleged, in cause numbers 1036968 and 1036969, that appellant
committed aggravated sexual assault of a child by penetrating his young niece’s anus
with his penis. The cases were tried jointly. The trial court declared a mistrial in
cause number 1036968 after the jury indicated that it was deadlocked, and the jury
convicted appellant in cause number 1036969. It is that conviction that is the subject
of this appeal.
 
          The underlying aggravated sexual assault allegation in this case was reported
during an investigation of aggravated sexual assaults against the same child by
appellant’s brother, Joshua Diedrick, uncle to the complainant, after Joshua had been
caught in the act of sexually assaulting the complainant by anal penetration in March
2005. The day after the complainant’s forensic interview at the Child Assessment
Center as part of that investigation, the complainant revealed to her mother that she
had also been sexually assaulted on several occasions by her uncle Nick, appellant,
prior to the assaults by Joshua. As a part of the subsequent investigation of the
allegations against appellant, Officer Michael Parrie spoke with Joshua at the county
jail—after Joshua had pleaded guilty to the aggravated sexual assault charges against
him, but before sentencing on those charges—and Joshua told Parrie that the
complainant had made a potentially incriminating statement to him regarding
appellant during the course of one of Joshua’s assaults against her. 
          Joshua, Parrie, and the complainant were all called by the State to testify at
trial. The jury also heard from a forensic nurse who had examined the complainant,
from the forensic interviewer from the Children’s Assessment Center, and from a
therapist who saw the complainant for six sessions after charges had been filed
against appellant. Defense testimony came from appellant’s sister (the complainant’s
aunt), appellant’s mother (the complainant’s grandmother), and appellant’s stepfather. 
          Appellant was convicted in cause number 1036969, and the jury assessed his
punishment at 23 years in prison. Appellant filed a motion for new trial alleging
ineffective assistance of counsel, which the trial court denied after a hearing. Trial
counsel did not testify, either in person or by affidavit, at the hearing on the motion
for new trial. 
Voir Dire 
          Appellant’s first two issues raise complaints of denial of his right to effective
assistance of counsel during voir dire. First, appellant complains that his counsel
should have objected when the State questioned the venire with a “diluted”
hypothetical concerning whether it could consider community supervision


 as
punishment. Second, appellant complains that the trial court improperly restricted
counsel’s questioning of the potential jurors as to whether they could “truly consider
[community supervision] relative to the offense on trial as alleged in the indictment.” 
A.      Failure to object to the State’s hypothetical example
          During the State’s voir dire concerning community supervision as it related to
aggravated sexual assault, the prosecutor asked, “You know, because they think gosh,
if someone’s been convicted of aggravated sexual assault of a child, there is no way
I could ever consider it [community supervision as punishment]. Is that how some—a
lot of you think?” After a veniremember answered that he did not believe in
community supervision for aggravated sexual assault, the prosecutor told the panel
that, before she continued asking questions, she would give an example, explaining
that “we try to think of hypothetical situations where maybe [sic] that one-in-a-million case where you might give [community supervision].” She proceeded to give
an example of a 17-year-old special-needs high school student who had intercourse
with a 13-year-old girl, at the girl’s insistence, then, remorsefully, told his youth
minister about the encounter, turned himself in to the police, and was charged with
aggravated sexual assault of a child. The prosecutor then asked the venire panel if it
was “possible maybe some of you in that case could say, okay, maybe I would
consider [community supervision] in that case?” The only responses were from one
panel member, who stated that, even in that situation, she still “had an issue with
[community supervision]”


 and another member—the one who had initially stated that
he did not believe in community supervision when the charge was aggravated sexual
assault—admitting, on follow-up questioning by the prosecutor, that he “guess[ed]”
he could consider community supervision in that hypothetical.


 The prosecutor
concluded by asking the panel if “[e]veryone [was] okay [with] that range of
punishment? So when the defense attorney stands up, everyone can understand why
[community supervision] might be appropriate in a case.” There was no response
from the venire panel. It is the failure of defense counsel to object to this
hypothetical example given by the State that forms the basis of appellant’s complaint
of ineffective assistance in issue one. 
          Appellant argues that the State’s hypothetical example was an “improper
commitment question” because it “contained facts that were beyond those alleged in
the indictment” and avers that “[q]ualifying jurors using this fanciful hypothetical
allowed venire persons to avoid a candid response to whether they could truly
consider the full punishment range for the crime on trial,” “poisoned or tainted juror
understanding of what it meant to be able to consider the full punishment range,
allowing evasion of the true question of whether they could consider [community
supervision] for the offense on trial,” and “enabled panelists to agree they would
consider [community supervision] for aggravated sexual assault even though they
would never consider [community supervision] for the offense alleged in the
indictment.” Appellant submits that his counsel was, therefore, ineffective for not
having objected to this hypothetical.
          “[A] question is a commitment question if one or more of the possible answers
is that the prospective juror would resolve or refrain from resolving an issue in the
case on the basis of one or more facts contained in the question.” Standefer v. State,
59 S.W.3d 177, 180 (Tex. Crim. App. 2001). “[N]ot all commitment questions are
improper.” Id. at 181; accord Barajas v. State, 93 S.W.3d 36, 38–39 (Tex. Crim.
App. 2002). Specifically, “[w]hen the law requires a certain type of commitment
from jurors, the attorneys may ask the prospective jurors whether they can follow the
law in that regard.” Standefer, 59 S.W.3d at 181. “For example, questions
concerning a juror’s ability to consider the full range of punishment for a particular
offense meet the above definition of commitment questions but are nevertheless
proper.” Id. However, “the parties may not ask whether venire members can
consider [community supervision] under the particular facts of the case beyond the
offense as charged in the indictment.” Barajas, 93 S.W.3d at 38 n.1. 
          A reviewing court’s inquiry for determining whether a question is an improper
commitment question has two steps:
(1) Is the question a commitment question, and (2) Does the question
include facts—and only those facts—that lead to a valid challenge for
cause? If the answer to (1) is “yes” and the answer to (2) is “no,” then
the question is an improper commitment question, and the trial court
should not allow the question.

Standefer, 59 S.W.3d at 182–83.
          We therefore first consider whether the hypothetical example used by the State
was a commitment question. 
           The State’s hypothetical example neither attempted to commit the venire panel
to resolve an issue based on a particular fact, nor asked the panel members to refrain
from resolving an issue on the basis of a particular fact, nor asked the panel members
to provide the hypothetical parameters for their decision-making. See id. at 179–80
(discussing ways in which questions may be commitment questions); Halprin v. 
State, 170 S.W.3d 111, 119–21 (Tex. Crim. App. 2005) (holding that State’s
hypothetical example of “mercy killing” during discussion of range of punishment for
murder was not improper commitment question, even when defense objected that 
example was improper because it utilized facts beyond those contained in indictment
and was improper attempt to qualify juror on minimum end of punishment range). 
It would not have been an abuse of discretion for the trial court to have overruled an
objection that the State’s hypothetical example was an improper commitment
question, and so we cannot conclude that counsel was deficient for not having
objected to this hypothetical example. Counsel is not deficient for not objecting to
something that is not error. See Flowers v. State, 124 S.W.3d 801, 803–04 (Tex.
App.—Houston [1st Dist.] 2003, pet. ref’d) (holding that trial counsel was not
ineffective for failing to object because, even if counsel had objected, trial court
would not have abused discretion in admitting testimony or evidence).
          We overrule appellant’s first issue.
B.     Limitation of voir dire 
          In his second issue, appellant complains that the trial court improperly limited
his voir dire by
(1) preventing counsel from asking a proper voir question of the panel,
namely “‘If under these allegations the State were to prove that the
defendant sexually assaulted a child under the age of 14 by placing his
male sexual organ in her anus’ could you consider imposing the
minimum penalty, 5 years [community supervision]?”; and
 
(2) limiting counsel to asking jurors if they could “envision some
‘appropriate’ hypothetical situation (unlike the case alleged in the
indictment) where jurors could consider [community supervision].” 
Appellant argues that these actions by the trial court deprived him of the effective
assistance of counsel because they “prevented the full and effective voir dire of the
jury”


 in violation of his right to counsel under Article 1, Section 10 of the Texas
Constitution.


 
 
          It is well established that the right to counsel under Article 1, Section 10 of the
Texas Constitution encompasses the right to pose proper questions during voir dire
examination. See Jones v. State, 223 S.W.3d 379, 381 (Tex. Crim. App. 2007);
Howard v. State, 941 S.W.2d 102, 108 (Tex. Crim. App. 1996); McCarter v. State,
837 S.W.2d 117, 119 (Tex. Crim. App. 1992); Smith v. State, 703 S.W.2d 641, 643
(Tex. Crim. App. 1985). This right allows a defendant the opportunity to
“intelligently and effectively exercise peremptory challenges and challenges for
cause.” McCarter, 837 S.W.2d at 119. However, a trial court has the discretion to
impose reasonable restrictions on voir dire, id., and “can and should control the scope
of voir dire by exercising [its] sound discretion to limit improper questioning.” 
Smith, 703 S.W.2d at 643; see also Ex Parte McKay, 819 S.W.3d 478, 482 (Tex.
Crim. App. 1990) (discussing authority of trial court to control voir dire process “if
sound discretion would compel the trial judge . . . to restrict the questioning in the
interest of conducting an orderly and expeditious trial.”). Accordingly, when a
defendant complains of a trial court’s limitation of the voir dire process in violation
of his right to counsel under Article 1, Section 10 of the Texas Constitution, such
complaint is analyzed under an abuse-of-discretion standard, the focus of which is
whether the defendant “proffered a proper question concerning a proper area of
inquiry.” Howard, 941 S.W.2d at 108; see also Smith, 703 S.W.2d at 643 (holding
that trial court’s decision to restrict voir dire may be reviewed only for abuse of
discretion); Ex Parte McKay, 819 S.W.2d at 482 (same, citing Smith). When a
defendant is denied the right to pose a proper question during voir dire, the error is
one of constitutional dimension, Jones, 223 S.W.3d at 380, but subject to a harm
analysis, see id. at 383; Rich v. State, 160 S.W.3d 575, 577 (Tex. Crim. App. 2005)
(citing Gonzales v. State, 994 S.W.2d 170, 171 (Tex. Crim. App. 1999)). Whether
the defense was compromised by such denial, i.e., whether precluding the question
prevented counsel from rendering effective assistance, relates to the determination of
harm, not error. Jones, 223 S.W.3d at 382, 383.
          Review of the record in the present case indicates that during general
questioning of the panel by the defense, counsel began a discussion of punishment
with the venire, and the following then transpired: 
          [Defense Counsel]:          The minimum penalty in an aggravated sexual
assault of a child is five years [community
supervision]. Five years of [community
supervision]. If under these allegations the State
were to prove that the defendant sexually assaulted
a child under the age of 14 by placing his male
sexual organ in her anus— 
 
[Court]:I won’t permit that question. It is a
commitment question specific— 
 
          [Defense Counsel]:          I won’t be specific to the indictment, Your Honor.
          [Court]:                            I will not let you.
          [Defense Counsel]:          Thank you, Judge.
          Defense counsel went on to ask the panel members questions regarding
whether they could consider the minimum punishment of five years’ community
supervision in an aggravated sexual assault of child case.


 At one point during this
questioning, the trial court interjected the words “in an appropriate case” and
informed the venire members that the purpose of the questioning was not to consider
what the appropriate punishment was in the case pending before them, or whether
they would “give [community supervision] in this case,” because “nothing had been
proved.” The court explained that it was inappropriate to ask the panel members what
they “would do in this case” and “the only appropriate question was whether or not
in the appropriate case the jury could consider the minimum punishment of five years
[community supervision] in a sexual assault of a child.” The court also told the
venire members that the court was not saying that any of the given hypotheticals
exemplified cases in which community supervision was appropriate; rather, the
hypotheticals were simply examples of “the kind of case [that venire members] might
think . . . potentially . . . appropriate for [community supervision].” The court
emphasized that the jury had to be open to the entire punishment range because “the
case that you hear, it could be a—you know, appropriate for the minimum. It could
be appropriate for the maximum. But what we have to recognize is what the range
of punishment is and be willing to assess punishment in that range—okay—in the
appropriate case.” Defense counsel also clarified that he did not mean to ask the
venire members what they would do “in this case.” 
          Appellant’s first complaint under this issue is that the trial court improperly
prevented him from asking a proper voir dire question to the venire panel. However,
the record does not include the actual question that defense counsel would have posed
to the panel. On appeal, appellate counsel has appended the words “could you
consider imposing the minimum penalty, 5 years [community supervision]?” to the
portion of the attempted question by trial counsel that is in the record (which reads,
“If under these allegations the State were to prove that the defendant sexually
assaulted a child under the age of 14 by placing his male sexual organ in her anus .
. .”), but there is nothing in the record that establishes that such addendum was the
actual terminal clause intended by trial counsel. No bill of exception was made
setting out the complete question that defense counsel would have posited, nor was
any record created of the question that would have been asked at the motion for new
trial. Likewise, appellant’s second complaint under this issue is that he was
improperly limited by the trial court to asking jurors if they could envision some
appropriate hypothetical situation under which they could consider community
supervision. Yet there is nothing in the trial record that establishes what questions
appellant would have otherwise asked the venire panel if he had not allegedly been
so restricted by the trial court. 
          When an appellant challenges a trial court’s limitation of his voir dire, the
reviewing court analyzes this challenge under an abuse-of-discretion standard, “the
focus of which is whether the appellant proffered a proper question concerning a
proper area of inquiry.” Caldwell v. State, 818 S.W.2d 790, 793 (Tex. Crim. App.
1991), overruled on other grounds, Castillo v. State, 913 S.W.2d 529 (Tex. Crim.
App. 1995). A trial court has broad discretion over jury selection, including the right
to impose reasonable limits on the voir dire examination. Sells v. State, 121 S.W.3d
748, 755 (Tex. Crim. App. 2003). The propriety of a particular question is left to a
trial court’s discretion, and its ruling will not be disturbed on appeal absent an abuse
of discretion. Id. A trial court’s discretion is abused when it prohibits a proper
question about a proper area of inquiry. Id. at 755–56.
          In order to decide whether the trial court erred in prohibiting a voir dire
question, the reviewing court “must first determine if the appellant proffered a proper
question”—one which is both “appropriately phrased and relevant.” Caldwell, 818
S.W.2d at 793, 794. If an appellant does not actually frame a question to the trial
court, nothing is preserved for review because “there must be a question before there
can be a proper question.” Caldwell, 818 S.W.2d at 794; see also Cockrum v. State,
758 S.W.2d 577, 584 (Tex. Crim. App. 1988). Similarly, an appellant does not
preserve error by informing the trial court of the general subject area from which he
wishes to propound questions. Sells, 121 S.W.3d at 756; Caldwell, 818 S.W.2d at
794. “Potentially, a wide range of specific questions—both proper and
improper—could [be] asked within [a proper subject] area.” Caldwell,818 S.W.2d at
794. For this reason, in order to preserve error as to the improper limitation of voir
dire, an appellant “must show that he was prevented from asking particular questions
that were proper.” See Sells, 121 S.W.3d at 756 (emphasis in original). “That the
trial court generally disapproved of an area of inquiry from which proper questions
could have been formulated is not enough because the trial court might have allowed
the proper question had it been submitted for the court’s consideration.” Id.; see also
Shannon v. State, 942 S.W.2d 591, 596 (Tex. Crim. App. 1996) (“[B]ecause appellant
never set out a specific question he wanted to ask, we cannot determine whether that
particular question would have been proper.”); Easterling v. State, 710 S.W.2d 569,
575–76 (Tex. 1986) (“Before we can determine if the trial court has abused its
discretion by improperly restricting the voir dire examination, it is necessary for the
record to reflect what questions the defendant desired to ask the jury panel”);
McManus v. State, 591 S.W.2d 505, 519–20 (Tex. Crim. App. 1979) (“In order for
this court to determine whether the parties’ questions were proper questions, they
must appear in the record.”), overruled on other grounds, Reed v. State, 744 S.W.2d
112 (Tex. Crim. App. 1988); Mohammed v. State, 127 S.W.3d 163, 170 (Tex.
App.—Houston [1st Dist.] 2003, pet. ref’d) (“Because appellant did not show that he
was prevented from asking a particular, proper question, he failed to preserve error
for review”).


 
          In this case, the record does not reflect what particular question appellant
would have asked the venire panel had the trial court not prevented his doing so. It
reflects only an introductory clause to a single, incomplete question. On this record,
we do not know what the completed question would have been or what other
particular questions appellant would have asked the panel if he had not allegedly been
limited by the court. We therefore cannot determine whether such questions would
have been proper, “i.e., both appropriately phrased and relevant,” Caldwell, 818
S.W.2d at 794, and thus whether the trial court would have abused its discretion had
it denied such questions. Because appellant has not shown that he was prevented by
the trial court from asking proper voir dire questions, he has failed to preserve error. 
          We overrule appellant’s second issue. 
Guilt-Innocence Phase
          In issues three, four, and five, appellant argues that his defense counsel
rendered ineffective assistance by (1) failing to make various objections and to
request instructions related to a statement made by the complainant to appellant’s
brother, (2) failing to object to testimony and a portion of the State’s closing
argument that related to the effect of the crime on the complainant, and (3) failing to
present expert witness testimony regarding the complainant’s mental health and the
potential side effects of medications prescribed to her. 
A.      Standard of review for claims of ineffective assistance of counsel
          The United States Constitution, the Texas Constitution, and a Texas statute
guarantee an accused the right to assistance of counsel. See U.S. Const. amend. VI;
Tex. Const. art. I, § 10; Tex. Code Crim. Proc. Ann. art. 1.051 (Vernon Supp.
2008). As a matter of state and federal law, this right includes the right to reasonably
effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686, 104 S.
Ct. 2052, 2063 (1984); Ex parte Gonzales, 945 S.W.2d 830, 835 (Tex. Crim. App.
1997). 
          The United States Supreme Court has established a two-prong test to determine
whether counsel is ineffective. See Strickland, 466 U.S. at 687–95, 104 S. Ct. at
2064–69; Hernandez v. State, 726 S.W.2d 53, 55–57 (Tex. Crim. App. 1986)
(applying Strickland test to review of claim of ineffective assistance of counsel under
Texas statutes and constitutional provisions). To prove ineffective assistance of
counsel, an appellant must show that (1) trial counsel’s representation fell below an
objective standard of reasonableness, based on prevailing professional norms, and (2)
there is a reasonable probability that the result of the proceeding would have been
different but for trial counsel’s deficient performance. Strickland, 466 U.S. at
688–94, 104 S. Ct. at 2064–68; see Thompson v. State, 9 S.W.3d 808, 812 (Tex.
Crim. App. 1999). Under Strickland, the appellant “must prove, by a preponderance
of the evidence, that there is, in fact, no plausible professional reason for a specific
act or omission.” Bone v. State, 77 S.W.3d 828, 836 (Tex. Crim. App. 2002). The
appellant must also show a reasonable probability that, but for counsel’s error, the
result of the proceeding would have been different. Id. at 833. An appellant must
prove both prongs of the Strickland test, or the contention of ineffective assistance
fails. Rylander v. State, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003). 

          Judicial scrutiny of counsel’s performance must be highly deferential, and the 
defendant must overcome the presumption that, under the circumstances of the case,
the challenged action might be considered sound trial strategy. Strickland, 466 U.S.
at 689, 104 S. Ct. at 2065. We apply a strong presumption that trial counsel was
competent and presume that counsel’s actions and decisions were reasonably
professional and motivated by sound trial strategy. Jackson v. State, 877 S.W.2d 768,
771 (Tex. Crim. App. 1994). 
          “When the record is silent on the motivations underlying counsel’s tactical
decisions, the appellant usually cannot overcome the strong presumption that
counsel’s conduct was reasonable.” Mallett v. State, 65 S.W.3d 59, 63 (Tex. Crim.
App. 2001); see also Bone, 77 S.W.3d at 830 (stating, “We are once again asked
whether an appellate court may reverse a conviction on ineffective assistance of
counsel grounds when counsel’s actions or omissions may have been based on
tactical decisions, but the record contains no specific explanation for counsel’s
decisions. Once again we answer that question, ‘no.’”). “If counsel’s reasons for his
conduct do not appear in the record and there is at least the possibility that the
conduct could have been legitimate trial strategy,” a reviewing court on direct appeal
will “defer to counsel’s decisions and deny relief on an ineffective assistance claim.” 
Ortiz v. State, 93 S.W.3d 79, 88–89 (Tex. Crim. App. 2002). It is not enough to
show, with the benefit of hindsight, that counsel’s actions or omissions at trial were
of questionable competence; rather the record must affirmatively demonstrate the
alleged ineffectiveness, and when the record is silent as to why an attorney took or
failed to take an action, an appellant fails “to rebut the presumption that trial
counsel’s decision was in some way—conceivable or not—reasonable.” Mata v.
State, 226 S.W.3d 425, 430–31 (Tex. Crim. App. 2007). “[I]n the absence of
evidence of counsel’s reasons for the challenged conduct, an appellate court
‘commonly will assume a strategic motivation if any can possibly be imagined’ and
will not conclude the challenged conduct constituted deficient performance unless the
conduct was so outrageous that no competent attorney would have engaged in it.” 
Garcia v. State, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001) (citations omitted). 
          For these reason, “[a] substantial risk of failure accompanies an appellant’s
claim of ineffective assistance of counsel on direct appeal.” Thompson, 9 S.W.3d at
813. In the majority of cases, the record on direct appeal will be insufficient for an
appellant to demonstrate deficient performance under the first part of the Strickland
standard because the reasonableness of counsel’s choices often involves facts not
appearing in the appellate record and the record does not adequately reflect the
motives behind trial counsel’s actions. Rylander, 101 S.W.3d at 110–11. Only in
rare cases will the record on direct appeal be sufficient for an appellate court to fairly
evaluate an ineffective assistance contention. Robinson v. State, 16 S.W.3d 808, 813
n.7 (Tex. Crim. App. 2000). 
 
B.      Failure to make objections and to request instructions regarding statement
by complainant to appellant’s brother

          In his third issue, appellant complains of his trial counsel’s response to a
portion of the State’s case involving a statement made by the complainant to
appellant’s brother, Joshua, during one of Joshua’s sexual assaults on her. The State
alleged that the complainant told Joshua that “[he was] doing the same thing that
[appellant had done] to [her].” Joshua told Officer Parrie about the complainant’s
statement during Parrie’s interview of Joshua. Appellant contends that counsel
should have made various objections to testimony and argument, and requested
various instructions to the jury, regarding this statement.
          Three witnesses testified about the statement at trial. 
          The first was Joshua, appellant’s brother, who was originally called by the
State as the “outcry”


 witness in the case based on his hearing the statement. Joshua
refused to answer questions from the State regarding the statement at issue but, when
questioned by defense counsel, Joshua offered that the complainant had actually said,
“Uncle Nick is just like you.” 
          The second witness was Officer Parrie, who testified that, during his interview
with Joshua, Joshua stated that the complainant told him, “You are doing the same
thing that Nick did to me.” This testimony was admitted, over a hearsay objection
that it was a prior inconsistent statement.
          The third witness was the complainant herself, who testified that she had told
Joshua, during one of his sexual assaults of her, that “[he was] doing the same thing
that Uncle Nick did to [her].” No objection was lodged to this testimony.
          Appellant acknowledges that trial counsel made various objections regarding 
the alleged statement, but contends that trial counsel performed deficiently by (1)
“agreeing with the prosecutor to have Joshua give outcry testimony,” (2) “failing to
object to Joshua’s purported outcry testimony or move to strike [the] same once it
became clear it did not describe an offense,” (3) “allowing the State to badger Joshua
with fact loaded questions purporting to describe an outcry without proper
objections,” (4) “failing to ask for an instruction to disregard after objection to an
improper question was sustained,” (5) “failing to ask for an instruction that would
have limited the prior inconsistent statement of Joshua to its impeachment value for
Joshua,” (6) “allowing the State to ascribe probative value of guilt to that statement
without objection when questioning Parrie,” and (7) “failing to object to the
prosecutor’s misstatement of evidence during [jury] argument.”



 
          There is no evidence in the record as to trial counsel’s motives for these
complained-of actions or inactions. Although there was a motion for new trial filed
that alleged ineffective assistance of counsel (albeit not raising the complaints now
raised in this issue on appeal), and a hearing on the same, there was no testimony or
affidavit from trial counsel offered into evidence or considered by the trial court at
the hearing on the motion for new trial. 
          We may not speculate on counsel’s motives in the face of a silent record. See
Thompson, 9 S.W.3d at 814 (refusing to speculate on trial counsel’s failure to object
in light of silent record); Ex parte Varelas, 45 S.W.3d 627, 632 (Tex. Crim. App.
2001) (reviewing court may not speculate as to why trial counsel failed to request
limiting instruction when record is silent, even if court has difficulty understanding
counsel’s inaction). Because we must presume that trial counsel’s conduct “falls
within the wide range of reasonable professional assistance” and that counsel “made
all significant decisions in the exercise of reasonable professional judgment,”



Strickland, 466 U.S. at 689–90, 104 S. Ct. at 2065–66, and because appellant has
failed to bring forward evidence overcoming that presumption, we are unable to
conclude that trial counsel’s performance was deficient on the basis of the record
before us. See Rayme v. State, 178 S.W.3d 21, 29 (Tex. App.—Houston [1st Dist.]
2005, pet. ref’d); Johnson v. State, 176 S.W.3d 74, 79 (Tex. App.—Houston [1st
Dist.] 2004, pet. ref’d). Moreover, given the record before us in this case, appellant
has not shown that counsel’s actions were so outrageous that no competent attorney
would have engaged in them. See Mata, 226 S.W.3d at 430–31; Garcia, 57 S.W.3d
at 440. Accordingly, we hold that the record on appeal is not sufficiently developed
for us to conclude that trial counsel’s performance was deficient. As we have found
insufficient evidence to support a contention of deficient performance, we need not
determine whether prejudice was shown. See Strickland, 466 U.S. at 697, 104 S. Ct.
at 2069 (holding that reviewing court need not address both prongs if appellant makes
insufficient showing on one). 
          We overrule appellant’s third issue.
 

C.      Failure to object to evidence and argument regarding effect of crime on
complainant 

          In his fourth issue, appellant contends that his trial counsel failed to object to
certain testimony elicited during the guilt-innocence phase of trial and to request a
motion in limine or have a hearing outside of the presence of the jury to determine its
admissibility. Appellant argues that the testimony was victim-impact evidence, which
was improperly introduced at the guilt or innocence phase of trial


 and that its
probative value was greatly outweighed by its prejudicial effect. Specifically,
appellant complains of the failure to object to the following testimony from the
complainant:
          [Prosecutor]:          How has what Uncle Nick and Uncle Josh [done]
affected you [sic]?
 
          [Complainant]:      Well, I am very scared of—if I don’t like—when I’m
alone at home or something like that or like I can’t
sleep in my room by myself. I have to ask my
brothers to sleep with me or go sleep with my
mother. 

Appellant argues that such testimony served no purpose other than to inspire
sympathy for the complainant and may have improperly helped sway the jury.
 
          Appellant also complains of evidence from the complainant’s therapist during
the following exchanges:
[Prosecutor]:         When you’d approach [the complainant] about that
subject [abuse by two unnamed uncles], what was
her demeanor like?
 
[Witness]:              She looked very sad. She didn’t make any eye
contact. She looked down a lot.
 
[Prosecutor]:          Was she emotional at all with you?
 
[Witness]:              Not very emotional. She always had a very flat
affect.
 
[Prosecutor]:          And can you explain that to the jury, why some
children, you know, aren’t bawling and some are flat
affect?
 
[Witness]:              Well, sexual abuse affects children differently. And
some children are affected in very extreme ways. 
Some of them have severe systems and some of
them shut down a lot and don’t show a lot of
emotion. Since [the complainant’s] personality is
very quiet to begin with, it was—it’s easy for her
—just not show any emotion and shut down. Based
on my interaction with her, she was just a very quiet
girl and she doesn’t like to hurt anyone. So, she just
kind of keeps her feelings to herself.
 
[Prosecutor]:          What did you talk about in therapy outside of abuse?
[Witness]:              Her—the effects of the abuse. She was having
nightmares and flashbacks in class. She couldn’t
concentrate in school.
 
 
          Appellant acknowledges that trial counsel tried to minimize the effects of this
testimony by showing that the complainant’s symptoms could have come from other
causes, such as physical and verbal abuse or parental neglect, but avers that this tactic
also made the complainant seem to be a victim and so would have heightened jury
sympathy. Appellant argues that no reasonable attorney would have pursued such a
strategy, but would instead have requested a hearing outside of the presence of the
jury to exclude such testimony entirely. 
          Appellant also complains of his counsel’s failure to object to a portion of the
State’s closing argument, in which he claims that the prosecutor asked the jurors to
look at the complainant and to notice how she was crying as a way to demonstrate
that the complainant was not lying. The portion of the argument in the record
relevant to this complaint reads as follows:
Can you imagine this little girl and what she’s going through? Look at
this face. Look at that face. For what? What is she gaining from this? 
Is she winning an award? Is she winning a prize? No. She’s crying,
that’s what she is doing. For what? Is she getting awarded for being
[sexually assaulted] by two uncles? Is that a cool thing? No, it’s the
truth. 
          Appellant argues that such statements were prosecutorial misconduct that may
have warranted a mistrial but, because trial counsel failed to object, counsel waived
error. Appellant concludes that these errors undermine confidence in the outcome of
the proceedings because they unfairly permitted the prosecutor to court sympathy for
the complainant and this may have swayed jurors toward a conviction.
          All of appellant’s complaints involved alleged ineffective assistance arising
from omissions by trial counsel. However, because appellant’s trial counsel was not
called as a witness at the motion for new trial hearing, nor was there any affidavit
from trial counsel considered by the trial court, there is no evidence in the record
regarding trial counsel’s reasons for not taking the challenged, omitted actions. 
Without evidence as to trial counsel’s reasons, we cannot conclude that counsel was
ineffective. Ortiz, 93 S.W.3d at 88–89; see also Tong v. State, 25 S.W.3d 707,
713–14 (Tex. Crim. App. 2000) (holding that when record was silent on why counsel
failed to object to improper impact testimony from victims of extraneous offenses,
record was insufficient to overcome presumption that counsel’s actions were part of
strategic plan); Rayme, 178 S.W.3d at 27, 29 (holding that when no evidence in
record as to why trial counsel failed to object to victim impact testimony, appellant
had not overcome strong presumption that conduct fell within wide range of
reasonable professional assistance and might be considered sound trial strategy). 
Given the sensitive nature of the case, refraining from objecting to these brief
references to the child complainant’s sadness and other effects of the crime could be
a reasonable trial strategy. See Henderson v. State, 704 S.W.2d 536, 538 (Tex.
App.—Houston [14th Dist.] 1986, pet. ref’d) (holding that not objecting can be trial
strategy). Moreover, appellant has not shown, by a preponderance of the evidence,
a reasonable probability that, had his counsel objected to these complained-of
statements, the result of the proceeding would have been different. Bone, 77 S.W.3d
at 833. 
           We overrule appellant’s fourth issue.
D.      Failure to investigate and to present evidence and expert testimony
          In his final issue, appellant complains that his trial counsel was ineffective for 
not investigating and presenting evidence and expert testimony regarding the
complainant’s 2003 psychological diagnosis and the side effects of a medication
prescribed to her.
          1. Standard of Review
          Appellant’s final complaint on appeal was raised as the sole issue in appellant’s
motion for new trial, which was considered and denied by the trial court after a
hearing on the motion. Accordingly, we analyze this claim as a challenge to the
denial of his motion for new trial. See Biagas v. State, 177 S.W.3d 161, 170 (Tex.
App.—Houston [1st Dist.] 2005, pet. ref’d) (citing Charles v. State, 146 S.W.3d 204,
208 (Tex. Crim. App. 2004)). In such circumstances, we review the Strickland test
through an abuse-of-discretion standard. Charles, 146 S.W.3d at 208 (reviewing
contention of ineffective assistance of counsel considered in motion for new trial
under abuse-of-discretion standard). “A trial court abuses its discretion in denying
a motion for new trial only when no reasonable view of the record could support the
trial court’s ruling.” Id. Thus, we reverse only if, viewing the evidence in the light
most favorable to the ruling, we conclude that the trial court’s decision is arbitrary or
unreasonable. Id. We defer to the trial court’s determination of historical facts,
presume that all reasonable factual findings that could have been made against the
losing party were made against that party, and defer to all reasonable implied factual
findings that the trial court might have made.


 Id. at 208, 211. Then, in light of the
implied reasonable factual findings, we determine whether the trial court, in denying
the motion for new trial, was “arbitrary or unreasonable,” id. at 208, acting “without
reference to any guiding rules or principles” that govern claims of ineffective
assistance of counsel. See Montgomery v. State, 810 S.W.2d 372, 380 (Tex. Crim.
App. 1990) (op. on reh’g). 
          2. Hearing on the motion for new trial
          Appellant’s motion for new trial alleged that defense counsel was ineffective
by (1) failing to introduce evidence at trial regarding a 2003 psychological screening
of the complainant and the side effects of the medication that she was taking and (2)
failing to retain an expert to study the 2003 screening report and to give opinions
regarding the complainant’s cognitive dysfunction and reality distortion and the side
effects of her medication, Concerta, such as psychotic behavior and hallucinations. 
Attached to the motion were (1) an affidavit from appellate counsel; (2) an affidavit
from appellant’s mother; (3) a psychological screening of the complainant by Dr.
John Largen, listing evaluation dates of 1/25/03 and 2/20/03; (4) a printout of
information from a web page about the drug Concerta; and (5) an affidavit from Dr.
Largen.


 Although the attached documents were not offered into evidence, the trial
court stated that it had reviewed the attachments, the State lodged no objection to
their consideration, and they were treated by all parties as if they had been admitted
into evidence.



          The sole witness testifying at the hearing was Lillian Powers, appellant’s
mother and the complainant’s grandmother. Powers testified that she had sent an
email to trial counsel seven months before trial and had asked him to introduce
information into the record about the results of a 2003 psychological screening of the
complainant, which included a finding that the complainant was rated within the
clinically significant range on measures of cognitive dysfunction and reality
distortion. She also asked the trial attorney to get into the record information as to
some side effects of the medication that the complainant had been taking, which
included psychotic behavior and hallucinations. She stated that defense counsel had
said that it could not be used, but he had not directly told her why. She also stated
that she would have been able to pay for an expert similar to Dr. Largen. She
explained that, at the time of trial, she and her daughter had again asked counsel
about the matter and he had told them that he could not use the report. 
          Appellant’s mother’s affidavit avers that trial counsel told her that “a retained
expert was not necessary” and, during trial, told her that “he could not get [Dr.
Largen’s evaluation and web pages describing side effects of complainant’s
prescribed medication] into evidence.” No evidence was received from appellant’s
trial attorney, either by testimony or affidavit. 
          3. Analysis
          The evidence presented in support of the motion for new trial is insufficient to
affirmatively demonstrate ineffective assistance of counsel. The only evidence
offered as to trial counsel’s motives and strategy was appellant’s mother’s statements
that counsel had told her that he could not use the documents, or offer them into
evidence, and that no expert was necessary. But the record is void of any evidence
as to the extent of any investigation that counsel actually conducted on these matters
and counsel’s reasons for choosing not to present such evidence or to call an expert
witness. Counsel should ordinarily be afforded an opportunity to explain his actions
before being denounced as ineffective. Rylander, 101 S.W.3d at 111 (holding that
reviewing court could not conclude that counsel was ineffective for not obtaining or
offering qualified medical expert testimony on “automatism” when record did not
contain any explanation from trial counsel regarding why he took or failed to take
actions). To conclude that counsel was ineffective on the record in this case, without
any evidence from counsel as to what investigation he conducted on this matter, or
his motivations for not employing such a defensive strategy, not offering such
evidence, and not calling an expert witness, would require speculation, which may
not be engaged in while reviewing the effectiveness of counsel. See Rayme, 178
S.W.3d at 29; Johnson, 176 S.W.3d at 79; see also Randon v. State, 178 S.W.3d 95,
101–03 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (declining to find ineffective
assistance of counsel for counsel’s failure to investigate and to present insanity
defense when record was “nearly bare” as to counsel’s trial strategy and depth of
investigation, holding that to do so would call for speculation). Moreover, there is
no evidence in the record that a particular expert existed, was available, and would
have provided testimony helpful to appellant. Without such evidence, we cannot
conclude that counsel was ineffective for failing to call an expert witness. See King
v. State, 649 S.W.2d 42, 44 (Tex. Crim. App. 1983).
          Nor can it be concluded, on this record, that no reasonable attorney would have
chosen not to present such evidence or testimony. The decision not to present
medical evidence or experts can be a reasonable trial strategy. See Marinos v. State,
186 S.W.3d 167, 180–81 (Tex. App.—Austin 2006, pet. ref’d) (holding that failure 
to offer expert testimony or other evidence that complainant’s medications could
cause misperceptions of reality or even hallucinations was strategic decision within
the scope of reasonable professional assistance). 
          Appellant has failed to demonstrate that no reasonable view of the record
supports the trial court’s ruling denying a new trial on the basis of ineffective
assistance of counsel.


 See Charles, 146 S.W.3d at 208 (“[A] trial court abuses its
discretion in denying a motion for new trial only when no reasonable view of the
record could support the trial court’s ruling.”). From the record before us, we cannot
conclude that the trial court’s decision to deny a new trial based upon ineffective
assistance of counsel was arbitrary or unreasonable. We hold that the trial court did
not abuse its discretion in denying a new trial and overrule appellant’s fifth issue.

Conclusion
          We affirm the judgment of the trial court.
 
 
Tim Taft
Justice
 
Panel consists of Justices Taft, Keyes, and Alcala.
Do not publish. See Tex R. App. P. 47.2(b).